INDUSTRIAL COMMISSION OF UTAH v. DALY MINING CO.

No. 3181.   Decided April 3, 1918.   (172 Pac. 301.)

1. STATUTES—CONSTRUCTION—INTENT. In construing statutes, the intent of the Legislature, if ascertainable, necessarily controls. (Page 604.)

2. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—SECURITY. Workmen's Compensation Act (Laws 1917, c. 100) section 53, requiring that employers shall insure payment of compensation in one of three ways, is compulsory on all employers. (Page 612.)

3. MASTER AND SERVANT—MANDAMUS—INDUSTRIAL COMMISSION—REQUIRING EMPLOYER TO SECURE PAYMENT OF COMPENSATION. The Industrial Commission may proceed in mandamus to compel employers to secure payment of compensation to employees required by Workmen's Compensation Act, section 53, because it has not other adequate remedy, and cannot sue for premiums where the employer has not elected under what provision it will be bound. (Page 615.)

4. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT. It is for the Industrial Commission alone to decide whether an employer will deposit security where it has elected to come under Workmen's Compensation Act, section 53, subd. 3, providing that an employer need

not insure where it furnishes to the commission satisfactory proof of financial ability to pay compensation direct to injured employees. (Page 616.)

5. STATUTES—CONSTRUCTION.   Where an act is susceptible of two constructions, the one most beneficial and useful should be adopted, if possible.   (Page 616.)

Original application for writ of mandate by the Industrial Commission of the State of Utah to compel the Daly Mining Company to furnish security for payment of compensation to employees.

WRIT GRANTED.

*Dan B. Shields,* Atty. Gen., and *Jas. H. Wolfe* and *O. C. Dalby,* Asst. Attys. Gen., for plaintiff.

*Marioneaux, Stott & Beck* for defendant.

FRICK, C. J.

This is an original application to this court by the plaintiff, hereinafter for convenience called the ''commission,'' for a writ of mandate to require the defendant to comply with a certain order made by the commission to which we shall more specifically refer later.   An alternative writ was duly issued requiring the defendant to comply with the order of the commission or to appear in this court and show cause why it refuses to do so.   The defendant appeared and filed a general demurrer and answer at the same time.   In view that the answer raises no material issue, the whole controversy was presented on the general demurrer.

The application for the writ is predicated on chapter 100, Laws Utah 1917, p. 306.   The act is quite voluminous and is divided into more than 100 sections, some of which are in themselves very long.   It is not practical to set forth the act at length nor to give all of its provisions even in condensed form.   We shall therefore set forth such portions only of the act as are deemed strictly essential to a full understanding of

the controversy, and the other portions that are deemed material will be stated in condensed form merely.

The act creates what is termed the Industrial Commission of Utah, which is the plaintiff here, called the "commission." The arrangement of the various matters contained in the act is not as orderly and logical as it might have been made, yet, when the objects and purposes of the act are considered and it is viewed as a whole, the intention of the Legislature, we think, can readily be ascertained. When that intention is once ascertained, it necessarily controls. 2 Lewis, Sutherland, St. Const., section 347. Counsel for the respective parties are, however, hopelessly at variance as to the real meaning of the several provisions of the act, and especially with respect of whether the provisions of the act are compulsory and thus require the employer to secure in advance the payment of any compensation to which any employee may become entitled under the act. The Attorney General insists with much vigor that in that regard the act is manifestly compulsory, while counsel for defendant with much force contend that the act is elective, or, at most, coercive. Whether it is the one or the other is the only question that is presented for determination, and we shall now, as briefly as possible, proceed to a consideration of that question.

We shall first set forth the portions of the act as before indicated. We shall refer to the sections in the order they are numbered in the act, regardless of the matter contained therein.

After stating matters of inducement and providing for the organization of the commission, in sections 1 to 31, section 32 prescribes rather drastic penalties in case any of the provisions or requirements of the act are violated.

Section 34 provides that all employers of labor, in January of each year, must make and file with the commission certain statements as provided in that section.

Section 35 creates what is termed "the state insurance fund for the purpose of insuring employers against liability for compensation under this act, and of assuring to the persons entitled thereto the compensation provided by this act."

Section 41 provides that all employers who insure in "the state insurance fund" shall receive from the commission a contract or policy of insurance in a form to be approved by the state commission.

Section 50 reads as follows:

"The following shall constitute employers subject to the provisions of this act: (1) The state and each county, city, town, and school district therein. (2) Every person, firm, and private corporation, including every public utility, that has in service four or more workmen or operatives regularly in the same business, or in or about the same establishment under any contract of hire, express or implied, oral or written, except agricultural laborers and domestic servants; provided, that employers who have in service less than four employees shall have the right to come under the terms of this act by complying with the provisions thereof, and all the rules and regulations of the commission. The term 'regularly' as herein used shall include all employments, whether continuous throughout the year or for only a portion of the year. It means all employments in the usual course of the trade, business, profession or occupation of an employer."

Section 51 defines what employees come within the provisions of the act.

Section 52a provides:

"If a workman receives personal injury by accident arising out of and in the course of his employment, his employer, or the insurance carrier shall pay compensation in the amounts and to the person or persons hereinafter specified."

Section 53 reads as follows:

"Employers, but not including municipal bodies, shall secure compensation to their employees in one of the following ways: (1) By insuring and keeping insured the payment of such compensation with the 'state insurance fund;' or (2) by insuring and keeping insured the payment of such compensation with any stock corporation or mutual association authorized to transact the business of workmen's compensation insurance in the state; or (3) by furnishing to the commission satisfactory proof of financial ability to pay direct the com-

pensation in the amount and manner and when due as provided for in this act. In the latter case the commission may in its discretion require the deposit of acceptable security, indemnity, or bond to secure the payment of compensation liabilities as they are incurred.

"All stock corporations or mutual associations transacting the business of workmen's compensation insurance in this state under the terms of subdivision 2 of this section shall be subject to the rules and regulations of the commission with respect to rates to be charged, and methods of compensation to be used."

Section 54 provides:

"If the insurance so effected is not with the 'state insurance fund' the employer shall forthwith file with the commission in form prescribed by it a notice of his insurance, together with a copy of the contract or policy of insurance."

Section 61 merely fixes the rights of employees who are covered by insurance in the "state insurance fund."

Section 63 is important, and hence we set it forth in full. It reads as follows:

"Subject to the approval of the commission, any employer may enter into or continue any agreement with his employees to provide a system of compensation, benefit or insurance in lieu of the compensation and insurance provided by this act. No such substitute system shall be approved unless it confers benefits upon injured employees and their dependents, at least equivalent to the benefits provided by this act, nor if it requires contributions from the employees unless it confers benefits in addition to those provided under this act at least commensurate with such contributions.

"Such substitute system may be terminated by the commission on reasonable notice and hearing to the interested parties if it shall appear that the same is not fairly administered or if its operation shall disclose defects threatening its solvency, or for any substantial reason it fails to accomplish the purposes of this act; and in this case the commission shall determine upon the proper distribution of all remaining assets, if any, subject to the right of any party in interest to take an appeal

as in other cases of appeal from the orders of the commission. Any employer who makes a deduction for such purposes from the wages or salary of any employee entitled to the benefits of this act shall be guilty of a misdemeanor. Provided, that subject to the supervision of the commission nothing in this act shall be construed as preventing the employer and his employees entering, and it shall be lawful for them to enter, into mutual contracts and agreements respecting hospital benefits and accommodations and medical and surgical services, nursing and medicines to be furnished the employees as in this act provided; but no profit, directly or indirectly, shall be made by any employer as a result of such contract or agreement, the purpose and intent of this act in such respect being that where hospitals are maintained and medical and surgical services and medicines furnished, by the employer from payments by or assessments of his employees, such payments or assessments shall be no more or greater than necessary to make such hospital benefits and accommodations, including surgical and medical services and medicines, self-supporting for the care and treatment of his employees, and all sums received or retained by the employer from the employees for such purpose shall be paid and applied thereto; and provided further, that such hospitals so maintained in whole or in part by payments or assessments of employees, shall be subject to the inspection and under the supervision of the commission as to services and treatment rendered such employees.''

Section 64 provides that all employers who do not insure either in the ''state insurance fund'' or with some other insurance company must, nevertheless, pay into the state treasury a tax equal to the premium tax that insurance companies generally are required to pay to the state on the premiums received by such companies from those who insure with them.

Sections 66, 67, 68, and 69 are of such a nature that we cannot well condense them, and for that reason we append them in full:

''Section 66. Employers who comply with the provisions of section 53 of this act shall not be liable to respond in damages for injuries sustained by their employees not resulting in

death. For injuries, however, resulting in death, the dependents of the deceased employee are given the right, within such time as the commission by rule shall prescribe, to elect (a) between bringing suit at law against such employer to recover damages for such death and in the event of suit said dependents must prove negligence on the employer's part before they can recover, or (b) to accept the benefits allowed to dependents of deceased employees by this act in the event of death. If they elect (b) they shall not be entitled to sue such employer at law to recover damages. If they elect (a) they thereby forfeit any rights to compensation under this act and in a suit at law shall not be entitled to recover damages from such employer if the deceased employee was himself guilty of contributory negligence, or if he assumed the risk, or if his death was due in whole or part to the negligence of a fellow servant. If the dependents of the deceased elect to sue as herein provided, and in such suit recover judgment against the employer, then the commission shall determine the amount to which the plaintiffs in such suit would· be entitled by accepting the provisions of this act, and pay the same toward the satisfaction of the judgment so recovered, if the employer against whom the judgment is recovered was, at the time the injuries causing the death were received, insured in the state insurance fund; otherwise such judgment shall be paid by the employer or his insurance carrier.

"Any deficiency shall be paid by the employer against whom the judgment is recovered.

"Section 67. Each employer providing insurance or electing directly to pay compensation to his injured, or the dependents of his killed, employees as herein provided, other than the employers mentioned in subdivision 1 of section 50 hereof, shall post in conspicuous places about his place of business typewritten or printed notices stating the fact that he has complied with the provisions of this act and all of the rules and regulations of the commission made in pursuance thereof, ·and has been authorized by the commission directly to compensate such employees or dependents, and the same, when so posted, shall constitute sufficient notice to his employees of the

fact that he has complied with the law as to securing compensation to his employees and their dependents.

"Section 68.   Employers who shall fail to comply with the provisions of section 53 hereof, shall not be entitled to the benefits of this act during the period of noncompliance but shall be liable to their employees or the dependents of their employees in case of death or damage suffered by reason of personal injuries arising out of and in the course of employment caused by the wrongful act, neglect or default of the employer or any of the employer's officers, agents, or employees, and also to the personal representatives of such employees where death results from such injuries.   And in such action, the defendant shall not avail himself or itself of either of the following defenses:   The defense of the fellow-servant rule, the defense of the assumption of risk, or the defense of contributory negligence.   And in all such cases proof of the injury shall constitute prima facie evidence of negligence on the part of the employer and the burden shall be upon the employer to show freedom from negligence resulting in such injury.

"And such employers shall also be subject to the provisions of the two sections next succeeding.

"Section 69.   Any employee whose employer has failed to comply with the provisions of section 53 hereof, who has been injured by accident arising out of and in the course of his employment, wheresoever such injury has occurred, and which was not purposely self-inflicted, or his dependents in case death has ensued, may, in lieu of proceeding against his employer by civil action in the courts, as provided in the last preceding section, file his application with the commission for compensation in accordance with the terms of this act, and the commission shall hear and determine such application for compensation in like manner as in other claims before the commission; and the amount of the compensation which said commission may ascertain and determine to be due to such injured employee, or to his dependents in case death has ensued, shall be paid by such employer to the person entitled thereto within ten days after receiving notice of the amount thereof as fixed

and determined by the commission; and in the event of the failure, neglect, or refusal of the employer to pay such compensation to the person entitled thereto, within said period of ten days, the same shall constitute a liquidated claim for damages against such employer in the amount so ascertained and fixed by the commission, which, with an added penalty of fifty per centum, may be recovered in an action in the name of the state for the benefit of the person or persons entitled to the same.

"The commission shall adopt and publish rules and regulations governing the procedure before the commission provided in this section, and shall prescribe forms of notices and the mode and manner of serving the same in all claims for compensation arising under this section. Any suit, action or proceeding brought against any employer under the provisions of this section, may be compromised by the commission, or such suit, action or proceeding may be prosecuted to final judgment as in the discretion of the commission may best subserve the interests of the persons entitled to receive such compensation."

Section 70 provides a remedy in case an employer fails to pay an insured employee the amount of compensation to which the latter is entitled under the act.

Section 71 reads as follows:

"The right to recover compensation pursuant to the provisions of this act for injuries sustained by an employee shall be the exclusive remedy against the employer, except that where the injury is caused by the employer's willful misconduct and such act causing such injury is the personal act of the employer himself, or if the employer be a partnership, on the part of one of the partners, or if a corporation, on the part of an elective officer or officers thereof, and such act indicates a willful disregard of the life, limb or bodily safety of employees, such injured employee may, at his option, either claim compensation under this act or maintain an action at law for damages. The term 'willful misconduct,' as employed in this section shall be construed to mean an act done knowingly and purposely with the direct object of injuring another."

Section 722 provides for an election of remedies in case an

employee dies from an injury inflicted throught the negligence of the master. The provisions of that section, and other similar provisions found in the act, merely make the act conform to our Constitution, which prohibits the Legislature from limiting the amount of damages that may be recovered in all cases of death resulting from negligent or wrongful acts of third persons.

The act contains many other provisions which are, however, not material to the controversy.

The application in this case is more particularly based upon subdivision 3 of section 53, *supra*. That section provides that all employers of labor, except municipalities, "shall secure compensation to their employees in one of the following ways": (1) By insuring payment of compensation in the "state insurance fund"; (2) by insuring payment by insuring with some company engaged in the indemnity insurance business; or (3) by furnishing satisfactory proof to the commission of the financial ability of the employer to pay such compensation direct to his employees. If, however, the employer desires to pay direct without obtaining insurance as provided in subdivisions 1 and 2 aforesaid, the commission may, in its discretion, nevertheless require security in the manner provided by the act so that in case any employee shall become entitled to compensation the same will be paid without delay. It is alleged in the application that on the 1st day of July, 1917, the defendant made application to the commission pursuant to subdivision 3 aforesaid for the privilege of paying the compensation provided by the act to its employees direct; that the commission granted the privilege, upon the express condition, however, that the defendant "file with the commission its surety bond or liquid collateral in the sum of twenty-five thousand dollars." A formal order to that effect was made by the commission, and the defendant has failed and refused to comply with such order or to otherwise secure the payment of compensation to its employees as provided by the act. All of the foregoing facts are admitted by the demurrer. The commission therefore prayed that the defendants be "commanded to file with the commission its bond in the sum

of twenty-five thousand dollars or liquid security in that amount as required by said commission's order, or, in lieu thereof, to file its policy with said commission as evidence of its having insured its employees either in the 'state insurance fund' or in some stock corporation,'' as provided by the act.

It will be observed that the language of section 53 is mandatory and not merely permissive. True, employers are given the right to elect whether they will insure the payment of compensation in the ''state insurance fund,'' or by obtaining insurance with some insurance company, or whether they will furnish proof to the commission that they are financially able to make prompt payment of the compensation to their employees. A mere cursory reading of the whole act will convince any one, we think, that the Legislature manifestly intended that all employers by one of the three methods referred to shall in advance secure the payment of the compensation to which any one of their employees may become entitled under the act. Such laws are in force in many states. Honold on Workmen's Compensation, section 32, note. The compulsory feature of such laws has not only been held valid and enforceable by state courts of last resort, as appears from the cases of *State ex rel.* v. *Clausen,* 65 Wash. 156, 117 Pac. 1101, 37 L. R. A. (N. S.) 466, and *State* v. *Mountain Timber Co.,* 75 Wash. 518, 135 Pac. 645, L. R. A. 1917D, 10, but has also been held valid and enforceable by the Supreme Court of the United States in *Mountain Timber Co.* v. *Washington,* 243 U. S. 219, 37 Sup. Ct. 260, 61 L. Ed. 685, Ann. Cas. 1917D, 642, and in *New York Cent. R. Co.* v. *White,* 243 U. S. 188, 37 Sup. Ct. 247, 61 L. Ed. 667, L. R. A. 1917D, 1, Am. Cas. 1917D, 629. In the last case cited the court, in passing upon the scheme of compulsory compensation (243 U. S. at page 208, 37 Sup. Ct. at page 255 [61 L. Ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629]), says:

''We conclude that the prescribed scheme of compulsory compensation is not repugnant to the provisions of the fourteenth amendment.''

In that case, as pointed out by the court, the payment of compensation could be secured by either one of three methods (a) by state insurance, (b) by insurance with an insurance

company, and (c) by a deposit of securities. Those are the precise methods provided for by the act in question. The Supreme Court of the United States, in the case last cited, found no valid objection to the enforcement of either method.

Counsel for defendant, however, vigorously contend that the provisions of the act relating to the insuring of the payment of compensation are merely elective, or, as they put it, are at mose coercive in view of the severe penalties that are imposed and by reason of other provisions contained in the act. In order to give counsel the full benefit of their contention, we have felt constrained to set forth the various sections upon which they more especially rely in full. While we freely concede that there are quite a number of provisions and expressions contained in those sections which, if considered by themselves, would more or less strongly indicate the insurance feature to be elective, yet, when the act is considered as a whole, and when the manifest purpose thereof is kept in mind, it is quite clear, to our minds at least, that the Legislature intended the insuring of compensation in advance to be compulsory. That is, in adopting the act it was the manifest purpose and intention of the Legislature to require all employers coming within its provisions to secure the payment of compensation to their empolyees in advance by either one of the three methods stated in section 53, *spura*. True it is that there are a number of provisions contained in the act that are merely elective, but those provisions are merely incidental.

Counsel, however, insist that the fact that the Legislature has provided for very drastic penalties in case any of the provisions of the act are violated in and of itself shows that it was intended to make the act elective rather than compulsory. While there is some force to the argument, yet, in our judgment, the mere fact that violations of the provisions of the act are somewhat severely penalized, that, standing alone, does not necessarily determine that the act is not compulsory in so far as it relates to the insuring of the payment of compensation in advance. Every employer, after having fully complied with the insurance feature of the act, may, nevertheless, violate its provisions in some other respect, and hence become

liable to be penalized. This applies with especial force to those employers who obtain the privilege of paying the compensation provided for in the act direct to their employees.

Counsel, however, also insist that in view that the act provides that the employers must post notices that they have complied with the provisions of the act also shows that it was not intended to include all employers, and hence this is another indication that the act is elective merely. In that connection it is argued that the presumption is that all men conform to the law and that the contrary is never presumed. From this counsel deduce that the posting of notices was required for the purpose of informing those who may seek employment which employer has adopted the provisions of the act and which one has not. When, however, the provisions of the Workmen's Compensation Acts of other states are examined, it will be found that such notices are required to be posted by the employers although the acts are concededly compulsory. It is manifest therefore that the purpose of the act requiring such notices to be posted is not to distinguish the employers who have complied with the act from those who have not, but that its purpose is to inform all those who may seek employment without further inquiry that the payment of compensation to which they may become entitled is secured as provided in the act. In other words, such a notice is for the benefit of the employees or for those who seek employment.

It is further contended that inasmuch as the act makes provision that employers who have obtained such insurance, under certain conditions, may withdraw from such insurance, also shows the act to be elective. Here, again, the right of withdrawal may be for a good and sufficient reason other than the one suggested by counsel. An employer may cease operations, or he may no longer be in the class covered by the act, or he may desire the other forms of insurance provided by the act, or may for some other reason desire to discontinue his business, and hence provision is made for his withdrawal.

It is, however, further contended that the commission has a plain, speedy, and adequate remedy by merely bringing an action against the defendant for the amount of the tax, as

counsel designate it, which defendant would be required
to pay under the act, and hence this proceeding will
not lie. The statute does not authorize such an action,
and we know of no law whereby the commission may enforce
payment of any money from any person who has not obligated
himself to pay or where the statute imposes no such obligation.
The duty that is imposed by the act, upon employers, is to com-
ply with its provisions relating to the insuring of the payment
of compensation provided for by it. As we read the act, the
commission is empowered to enforce obedience to its provisions
in that regard and to enforce the payment of the compensa-
tion when it becomes payable in accordance with the terms of
the act; but no power is conferred upon the commission to sue
to recover the amount employers are required to pay for in-
surance unless and until they have obligated themselves to
pay. The only remedy that the commission has in a case like
the one at bar, therefore, as we view it, is to compel the de-
linquent employer to comply with the provisions of the act
relating to the insuring of the payment of the compensation
provided by the act.

Nor is the contention that since a particular employer may
not become liable at all to pay any compensation under the
act and that for that reason, as counsel suggest, he may be re-
quired to pay money for insurance without receiving anything
in return, controlling. Apart from the fact that compulsory
compensation acts are defensible, in that they ultimately re-
sult in the public welfare, the employer, however, also receives
some benefit. Indeed, counsel very vigorously argue that in-
asmuch as the provisions of the act are beneficial to the em-
ployer, in that the amount that he is usually called on to pay
to an employee who is injured through the employer's negli-
gence is greatly reduced and in the saving of court costs and
other incidental expenses, it was not necessary to make the
provisions of the act compulsory, but that those benefits are a
sufficient inducement to the employer to come within its pro-
visions. It is argued that the beneficial provisions therefore
are alone sufficient to induce the ordinary employer to avail
himself of the provisions of the act. We have, however, al-

ready attempted to show that such a contention does not make the act elective.

Finally, counsel insist that the defendant objects to being coerced in this manner, "because in this particular case the employer is especially well secured against accidents to its employees, does not need insurance, and objects to having insurance forced upon it contrary to law." The commission, upon whom was conferred the power to decide the question, however, held otherwise. It decided and ordered that the defendant secure the payment of the compensation as the act provides and as it in its discretion may do. Insurance is therefore not forced upon defendant "contrary to law," but it is merely required to do what the law enjoins.

In conclusion, we desire to state that, if it be held that the provisions of the act are merely elective, then very little, if anything, is gained by its enactment. While such a reason may not be conclusive—may not even be controlling—yet it is one the court should not overlook. It is always important in construing and applying the provisions of any comprehensive act, such as the one under consideration, to keep in mind the purpose the Legislature had in view in adopting it. If therefore an act is subject to two constructions, one of which in a large measure would make it useless and of no material benefit to anyone, while the other construction would manifestly made it effective and beneficial, and, moreover, would subserve the public welfare, the court should be slow to adopt the first construction, but should adopt the second if such may be done according to sound principles of law and rules of construction.

We are constrained to hold therefore that the act in question is compulsory, and that the defendant should be required to conform to and comply with the order of the commission to which we have hereinbefore referred.

It is therefore ordered that a peremptory writ of mandate issue as prayed in the application. It is further ordered that the defendant pay the costs of this proceeding.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.