[Civil No. 3726.   Filed November 23, 1936.]

[62 Pac. (2d) 320.]

# EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., a Corporation, Petitioner, v. LEO FROST (Defendant-Employer), and THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Messrs. Frazier & Perry and Mr. Charles E. Mc-Daniel, for Petitioner.

Mr. W. E. Ferguson, for Respondent Frost.

Mr. Don C. Babbitt and Mr. Howard A. Twitty, for Respondent Industrial Commission.

ROSS, J.—The Employers' Liability Assurance Corporation, Limited, by the proceeding of *certiorari,* seeks to have an award of the Industrial Commission of compensation benefits against it as insurance carrier and in favor of the parents of Oreno Ralph Stevens, who was killed by accident arising out of and in the course of his employment, vacated and set aside as to it on the ground that the evidence conclusively

shows that it was not the insurance carrier of the deceased employee at the time of the injury and death.

Deceased was an employee of Leo Frost, engaged in road construction at or near Adamana, Arizona. Before that, on January 19, 1934, Frost consulted the Lloyd C. Henning Insurance Agency, of Holbrook, Arizona, regarding compensation insurance to cover the construction job at Adamana, and on that day the local agency wrote D. C. Crowell & Co., of El Paso, Texas, the general agents of the petitioner, asking for rates and whether or not petitioner would accept such coverage. January 20th the general agents replied as follows:

"Answering your letter of January 19th, before we can advise you definitely regarding this risk, it will be necessary that we have the attached New Risk Memorandum completed in full detail. Also, please give us complete information as to the past experience of this applicant; that is, the number of injuries sustained by employees, the nature of the injury and the amounts paid for medical, hospital and compensation benefits.

"Also this assured would be required to carry concurrent public liability insurance and we would have to be favored with all miscellaneous casualty lines.

"This work would be classified under Code No. 5507, Street and Road Construction, and the rate for the compensation insurance including Employer's Liability would be $9.544 per hundred dollars of the payroll, subject to a minimum premium of $129.78 and deposit of at least $150.00 with monthly adjustment of payroll. You stated in your letter that this work was located twenty miles from Holbrook. We presume that Holbrook is the nearest town or rather that it is the nearest point at which a doctor would be located, and have figured this rate accordingly. If this is incorrect, of course, the rate would be reduced if there is a doctor or hospital within a shorter distance.

"The rate for the public liability policy for standard limits of five and ten thousand dollars is 73¢ per hun-

dred dollars of the payroll subject to a minimum and deposit of $15.00.

"Upon receipt of properly completed New Risk Memorandum and full information as to the past experience, we shall be glad to give this risk our further consideration."

This letter was received in due course, and on February 10th was read to Frost by a representative of the Henning Agency, who also told him the local agency was limited to soliciting and could not write the compensation insurance. This he admits.

On February 12th Frost gave to the Henning Agency his check for $150 as and for premium, and such agency on that same date mailed the information requested in the letter of January 20th. On that same day, and before the general agents at El Paso had received the "New Risk Memorandum and full information as to past experience," Stevens met his death. No policy was issued.

It is the contention of petitioner that these facts show it was not the insurance carrier of Frost, the employer; that it did not contract to pay compensation to Frost's employees or benefits to the employees' survivors.

The respondents, while not contending that a contract of insurance was actually agreed to by and between the petitioner and Frost, or that one was issued, insist that by reason of the application by Frost to petitioner for compensation insurance the petitioner under the law is liable as though the policy had actually been agreed to and issued.

■■ A policy of insurance is a contract, and like all other contracts its essentials are: "(1) Parties competent to contract. (2) A subject matter. (3) A legal consideration. (4) Mutuality of agreement. And (5) Mutuality of obligation." 13 C. J. 237, § 1.

It is perfectly apparent that the last two named elements of a binding contract were not present and that the minds of the parties did not meet. So it is clear that no contract of insurance by agreement of the parties was ever entered into.

The petitioner is a foreign corporation, and, before it was entitled to do an insurance business in Arizona, it was necessary that it apply for and obtain from the Corporation Commission a license or certificate. Sections 1782–1785, Rev. Code 1928. This it did. Under such authorization it was, through its local agent, soliciting and accepting and forwarding to petitioner's general agents applications for compensation insurance. Section 1422, Id., as amended by chapter 11, First Special Session, Laws 1933, or the pertinent part thereof, reads as follows:

"Employers, but not including the state or its legal subdivisions, shall secure compensation to their employees in one of the following ways: 1. By insuring and keeping insured the payment of such compensation with the state compensation fund; 2. By insuring and keeping insured the payment of such compensation, with a corporation or association authorized to transact the business of workmen's compensation insurance in the state, and filing with the commission, in form prescribed by it, notice of his insurance, together with a copy of the contract or policy of insurance. *Such corporation or association shall write and carry all risks or insurance for which application may be made to it which are not prohibited by law;* and shall carry a risk to the conclusion of the policy period unless cancellation is agreed to by the commission and the employer; any policy shall, however, be subject to cancellation at any time by the commission; 3. By furnishing to the commission satisfactory proof of financial ability to pay direct the compensation in the amount and manner and when due as herein provided. . . . Corporations or associations transacting the business of workmen's compensation insurance in the state shall be subject to the rules and

regulations of the commission, including rates to be charged, policy forms to be used, and the method of paying compensation.'' (Italics ours.)

The question is, did the petitioner, in securing authority to enter the field of workmen's compensation insurance in Arizona, constructively consent to write and carry all risks of insurance for which application might be made, and waive or surrender the right to investigate and inform itself of the risks and hazards incident thereto before issuing the policy or assuming the risk. It is the contention of the respondents that the petitioner, by qualifying under the laws of Arizona, in effect waived these rights. Petitioner contends that such a construction would violate the freedom of contract guaranteed by the Fourteenth Amendment.

No insurance company has a right to sell insurance in the state without complying with the laws of the state. The insurance business is an intrastate, and not an interstate, matter, and the state may therefore prescribe the terms upon which an insurance company may engage in it within its boundaries. It is affected with a public interest, and the state may by its legislation regulate and control it, whether it be conducted by a domestic or foreign company. *Hartford Fire Ins. Co.* v. *Nance,* (C. C. A.) 12 Fed. (2d) 575. The qualifications to write workmen's compensation insurance under our laws are the same for both domestic and foreign corporations. There is no suggestion here of discrimination. The petitioner, being a foreign corporation, must, before doing an insurance business in Arizona, comply with its laws and submit to such restrictions and conditions as the state in its discretion may impose, subject, however, to the applicatory provisions of the state and federal Constitutions. 14A C. J. 1244, §§ 3948, 3949; *Herbring* v. *Lee,* 126 Or. 588, 269 Pac. 236, 60 A. L. R. 1165;

Id., 280 U. S. 111, 50 Sup. Ct. 49, 74 L. Ed. 217, 64 A. L. R. 1430. The state, if it so chooses, may prohibit a foreign insurance company from entering the state, but, if it permits it to enter, it must not impose conditions which require such insurance company to relinquish any of its constitutional rights. It is said, in *Frost & Frost Trucking Co.* v. *Railroad Com.*, 271 U. S. 583, 46 Sup. Ct. 605, 607, 70 L. Ed. 1101, 47 A. L. R. 457:

"If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all."

An insurance company, by entering the state and carrying on business there, is not barred from asserting that the state legislation conflicts with the federal Constitution. *Metropolitan Casualty Co.* v. *Brownell,* 294 U. S. 580, 55 Sup. Ct. 538, 79 L. Ed. 1070.

If the quoted language of section 1422 be literally construed, a corporation or association that has qualified to write workmen's compensation insurance has no discretion but must insure every employer who makes application to it. It may not reject some risks and approve others, as insurance carriers are accustomed to do. It has surrendered the right to deal with the employer on the basis of the hazards of the risks or loss experience of the employer. Insurance is no longer a matter of negotiation between the parties.

If the risk asked to be written is, for any reason, such as the past bad experience of the employer, the dangerous place and kind of employment, the careless and reckless habits and indifference of the employer and employees, one in which the insurer is likely to be called upon to pay many and large compensations, we do not think that even the Industrial Commission could be compelled to assume and write the risk. One

of its duties is to protect the state compensation fund. The statute gives the commission full authority over this fund (section 1410), and provides, in section 1411, that:

"The commission may, in its name, make contracts of insurance to include and cover the entire underlying liability of employers insured in the state compensation fund."

This language is permissive and not mandatory. The provisions of section 1422, however, leave to insurance companies no alternative; they must write all applications. There is no reason, real or apparent, for this provision unless it be that it was put into the law as a deterrent to private insurance companies to enter the field of compensation insurance in competition with the state compensation fund. If that was the motive, the law should have prohibited insurance companies from selling compensation insurance in Arizona and not undertaken to compel them to insure all applications regardless of the hazards.

The respondents contend that, when an insurance company identifies itself or its business with the relation of employer and employee as fixed by the Workmen's Compensation Law (Rev. Code 1928, § 1391 et seq., as amended), it waives the right to select its risks, just as the employer and employee under such law waive or surrender certain of their common-law rights. It is true the state, exercising its police powers, has abolished the harsh rules of the common law governing the relation of employer and employee, and has substituted in lieu thereof an entirely different conception of justice and right. It is the industry that bears the wear and tear of those who work therein, the same way it bears the wear and tear to its mechanical tools. The courts have sustained workmen's

compensation laws on the theory that they promote the economic independence, security, and contentment of labor—essentials to the public order and general welfare.

An integral part of our Workmen's Compensation Law is "the state compensation fund," consisting of property and all premiums, penalties, and interest paid into the fund by employers and others; and this fund, it is provided, shall be applied by the Industrial Commission to insurance and to the payment of compensation and the expense of its administration. Section 1410. It is provided that the rate for premiums "shall be neither more nor less than self-supporting." Section 1413. It is clear, we think, under section 1422 and other related provisions of the Workmen's Compensation Law, that it is mandatory on the employer to insure compensation in advance of putting his employees to work. This has been declared to be the law by the state of Utah, whose statute in this particular is very much like ours. *Industrial Commission* v. *Daly Min. Co.,* 51 Utah 602, 172 Pac. 301. The employer may insure in the state compensation fund, and, if he so elects and pays the premium fixed by the commission according to the statutory methods (sections 1413, 1414, 1415, Id., as amended by chapter 11, § 2, First Special Session, Laws 1933), the latter may accept the risk and write the policy. Sections 1411 and 1412. In other words, if an employer is unable to secure insurance with an insurance company, or has not the financial ability to carry his own insurance, he can and must, in advance, insure in the state compensation fund. It is obvious that the success of the Workmen's Compensation Law is not dependent upon the ability of the employer to self-insure or to insure his employees in an insurance company. These are privileges the law extends to

him if and when the Industrial Commission is satisfied of his financial ability or that such insurance company is financially responsible and has qualified under the state law. Subdivision 3, § 1422.

The extension to a corporation or association of authority to write compensation insurance is not, in any possible sense, an exercise of the police power of the state, nor is the granting to the employer the option to insure with such concerns. Nor is the success of the Workmen's Compensation Law or the protection of the employee in any way dependent upon the exercise of these privileges. If it were, there might be some reason to sustain the contentions of the respondents. It is not *who* insures the employee compensation but the fact of insurance that is referable to the police power.

The courts have gone far in upholding the right of the state to regulate and control insurance business within its boundaries, but we have found no case where the facts, as here, call for a decision upon the power of the legislature to make it mandatory upon an insurance company qualifying under its laws to carry a certain kind of insurance to insure all risks of that kind "for which application may be made to it which are not prohibited by law." The only case whose facts approximate the facts here is *National Union Fire Ins. Co.* v. *Wanberg,* 260 U. S. 71, 43 Sup. Ct. 32, 34, 67 L. Ed. 136. The legislature of North Dakota had enacted the following statute (section 4902, Compiled Laws of North Dakota 1913) :

"Every insurance company engaged in the business of insuring against loss by hail in this state, shall be bound, and the insurance shall take effect from and after twenty-four hours from the day and hour the application for such insurance has been taken by the authorized local agent of said company, and if the company shall decline to write the insurance upon

receipt of the application, it shall forthwith notify the applicant and agent who took the application, by telegram, and in that event, the insurance shall not become effective. Provided, that nothing in this article shall prevent the company from issuing a policy on such application and putting the insurance in force prior to the expiration of said twenty-four hours.''

Under this statute the insurance company had twenty-four hours after receipt of application by its agent in which to decide whether it would accept the risk. Under our section 1422 the insurance company may not consider whether it will accept the risk, having, under respondent's contention, foreclosed itself in that regard by securing permission to write compensation insurance in the state. The fact of application for insurance against the risk is the only essential fact to the duty to insure it. The court, in discussing the North Dakota statute and giving reasons for upholding it, said:

''The Legislature was evidently convinced that it would help the public interest if farmers could be induced generally to take out hail insurance and 'temper the wind' so injurious to the agriculture of the state, and that they would be more likely to avail themselves of this protection if they could effect the insurance promptly and on the eve of the danger. The Legislature said, therefore, to companies intending to engage in hail insurance: 'To accomplish our purpose we forbid you to engage in this kind of business unless you agree to close your contracts within 24 hours after application is made. You must so extend the scope of the authority of your local agents, or must so speed communication between them and your representatives who have authority, as to enable an applicant to know within the limits of a day whether he is protected, so that, if not, he may at once go to another company to secure what he seeks. If, therefore, you engage in this exigent business, and allow an application to pend more than 24 hours, you will be held

to have made the contract of insurance for which the farmer has applied.'

"This does not force a contract on the company. It need not accept an application at all, or it can make its arrangements to reject one within 24 hours. . . .

"There is nothing in the statute under discussion which requires a company to receive applications or prevents it from insisting on the payment of a premium in advance before receiving them, or from reserving the usual right on the part of the insurer at any time to cancel the contract of insurance on service of due notice with a return of a proper proportion of the premium."

In response to the contention of the insurance company "that by this statute mandatory obligation is substituted for freedom of contract which is just that against which the Fourteenth Amendment was intended to secure persons," the court said: "We agree that this legislation approaches closely the limit of legislative power, but not that it transcends it." It is easy to surmise that the court's decision, if the North Dakota statute had made it mandatory on the insurance company to assume the hail insurance risk upon application, would have been that the limits of regulation had been transcended and the freedom of contract guaranteed by the federal Constitution violated.

In the Wanberg case one of the reasons given for sustaining the law was that hailstorms come on very quickly and, if the farmer is to get any benefits from his application for insurance against the destruction of his crops, the company must accept the risk or refuse it quickly, so that in the latter event he could apply to other insurance companies for hail insurance. In hail insurance the farmer has no control over the event against which he seeks insurance. The employer, on the contrary, has complete control over the time when the risk arises to which his employee

will be exposed, and can and should refrain from beginning his work until he has secured compensation insurance. The exigency of haste is not so evident as in hail insurance.

If respondents' contention be correct, the petitioner not only is bound to insure every employer who makes application for compensation insurance but must do so at a premium rate fixed by the Industrial Commission. If such rate should be lowered by the commission, after an insurance company has qualified to write compensation insurance in the state, to a point amounting to confiscation and ultimate ruin, the company could not question the rate, having entered the field knowing that the statute confers upon the Industrial Commission the power to fix rates of premium. If it be said the Industrial Commission would never fix the rate so low as to make compensation insurance unprofitable, the answer is it has the power to do so and, if it does, the insurance company is foreclosed, under respondents' contention, to question the reasonableness of the rate.

It seems to us that petitioner's contention, that the provision of section 1422, *supra,* makes it mandatory that it insure every employer who applies to it for insurance, violates the freedom of contract guaranteed by the Fourteenth Amendment.

Respondents further contend that petitioner is estopped to deny its liability as insurer of Frost, for the reason that it had not authorized its local agent to write contracts of insurance as provided by section 1813, Revised Code of 1928. Such section reads:

"No foreign company shall make, write, place or cause to be made, written or placed in this state any insurance policy or contract unless through its duly authorized agents, residents of this state; an insurance company violating this section shall have its certificate of authority to do business suspended for

not less than one year, to be renewed only upon a written pledge from the directors or executive body in authority over the officers that this section will be fully observed. If an agent or solicitor of a company doing business in this state accepts an application for insurance from any person not provided with the certificate for a broker or an agent or solicitor as required herein, and in any way compensates or promises to compensate such person for soliciting such application, the commission [corporation commission] shall, upon due proof and notice, suspend or revoke the certificate of such agent or solicitor; and if it appear to the commission that the company for which such agent or solicitor is acting is guilty of participation, the commission shall suspend the certificate of authority of such company to do business for not less than one or more than three months for each offense.''

The penalties for violating this statute are the suspension of the right of the insurance company to do business in the state, and the revocation or suspension of the authority of the agent securing any business for the company through outside agencies. It does not pretend to touch or affect the power of a foreign insurance company to write or not to write contracts or policies of insurance. Another reason why estoppel does not apply is that Frost was not misled to believe he was insured. On the contrary, he was told by the Henning Agency it could not write the policy but would accept the application and forward it to the general agents at El Paso for final action. There is no element of estoppel shown.

The award is vacated and set aside as to petitioner.

LOCKWOOD, C. J., and McALISTER, J., concur.