464 P.2d 990

Maurice D. TURNER, and Dorel Jensen, Kimberly Ann Jensen and Bimberly Lynn Jensen, minors, Appellants,

v.

WORTH INSURANCE COMPANY, a corporation, Appellee.

No. 2 CA–CIV 692.

Court of Appeals of Arizona, Division 2.

Feb. 10, 1970.

Rehearing Denied Mar. 2, 1970.

Review Granted March 31, 1970.

Robertson & Fickett, P. C. by J. Michael Moeller, Tucson, for appellant Jensen.

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for appellant Turner.

May, Dees & Newell, by Willis R. Dees, Tucson, for appellee.

HATHAWAY, Judge.

This appeal arises from a declaratory judgment action initiated by Worth Insurance Company against defendants Jensen, Turner, Wilson and Farmers Insurance Group. The main issue presented to the court was whether defendant Wilson had secured automobile liability insurance from Worth on August 17, 1964, which would cover an accident Wilson was involved in on August 23, 1964.

The court on January 24, 1966, concluded that the defendant Wilson "did not secure any automobile liability insurance on August 17, 1964 from the plaintiff Worth Insurance Company which would cover, apply to or protect him in the matter of the accident on August 23, 1964." From this judgment defendants Turner and Jensen appeal. A previous appeal by Farmers Insurance Group was dismissed. Farmers Insurance Group v. Worth Insurance Co., 8 Ariz.App. 69, 443 P.2d 431 (1968).

We shall first consider the contentions made by appellant Turner, who raises three questions: (1) Was there a written binder of insurance between Worth and Wilson? (2) Was there an oral binder of insurance between Worth and Wilson? and (3) Is Worth estopped to deny coverage by reason of its agent's acts, and its retention of the premium paid by Wilson?

■ No express findings of fact were made by the lower court, and in such a situation we must presume that its conclusions on every necessary issue and its findings on every controverted fact were such as to support the judgment. Goode v. Powers, 97 Ariz. 75, 397 P.2d 56 (1964).

■ Wilson went to Likens Insurance Agency on August 17, 1964 to secure automobile insurance so he would be allowed to drive his car on Davis Monthan Air Force Base. Mrs. Likens is a representative of Worth Insurance in Tucson as well as a representative for six to ten other insurance companies. An application for insurance was filled out and Wilson was given a receipt which allowed him to get a permit to drive on the Air Force base. In turn he paid a premium of $30.80 to Mrs. Liken.

On August 25, 1964, Mrs. Liken wrote to Wilson saying a higher premium rate would have to be paid by him, and for him "to let us know if the policy should be issued." Not receiving any response from Mr. Wilson, on September 18, 1964, Mrs. Liken wrote to him that " * * * your application for insurance coverage with Worth Insurance Co. has been rejected, and we return herewith your deposit * * *." This check was refused by Wilson.

A.R.S. § 20–1120 states in part:

"A. Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable endorsements as are designated in the binder, except as su-

perseded by the clear and express terms of the binder."

We conclude that a written binder of insurance was not issued to Mr. Wilson. Although Mr. Wilson states he did not read the application, a one page uncomplicated form, that application is entitled in large print "Special Risk Application for Automobile Insurance." Right below Mr. Wilson's signature the following appears in bold type: "No coverage is in effect until a binder in writing on a policy is issued by a policy writing office of International Service Group."

■ The evidence shows that Worth never accepted Wilson's application for insurance. 43 Am.Jur.2d Insurance § 210, p. 267 states:

"Until the application is accepted, no contractual relationship exists between an applicant for insurance and the insurance company. The acceptance of the application or proposal for insurance is necessary to make the policy of insurance founded thereon binding and effective, especially where by the terms of the application its approval is required before the risk shall attach."

■ While Mr. Wilson received a written receipt from Mrs. Liken, this appears to be for the $30.80 advance payment made by Wilson in applying for the insurance and not an insurance contract itself. And even though an application for insurance is accompanied by payment of premium a contract of insurance is not consummated until the acceptance by the company, 43 Am.Jur.2d Insurance § 210, particularly where the express provisions of the application so state.

Mr. Wilson testified that he told Mrs. Liken he needed insurance coverage immediately to drive on the Air Force base, and that Mrs. Liken told him he was insured as of that date. Mrs. Liken testified that she did not bind Mr. Wilson orally or by written agreement, and although it was her intent that he be covered as of August 17, 1964, such coverage was conditional upon the company accepting his application.

**406**

Mrs. Liken also denied telling Mr. Wilson on August 17, 1964 that he was insured at that time.

■ As in other contracts, an insurance contract must contain the requisite contractual elements. Employer's Liability Assurance Corp. v. Industrial Commission of Arizona, 48 Ariz. 402, 62 P.2d 320, 107 A. L.R. 1413 (1936). One of these requisites is that there be a meeting of the minds. Alexander v. O'Neil, 77 Ariz. 91, 267 P.2d 730 (1954).

■■ Mutual assent is based on objective evidence and does not depend upon the undisclosed intentions of the parties. Societe Cotonniere Du Tonkin v. United States, 145 Ct.Cl. 426, 171 F.Supp. 951 (1959). To protect one's reasonable expectances in reliance on a contract it is imperative that a contracting party be able to rely upon the apparent intentions of the other party, without concern as to his secret thoughts or mental reservations. Restatement of Contracts § 20; Brandt v. California Dairies, 4 Cal.2d 128, 48 P.2d 13 (1935). However, "there must be a distinct intention common to both and without doubt or difference and until all understand alike there can be no assent." Heywood v. Ziol, 91 Ariz. 309, 314, 372 P.2d 200, 203 (1962). In this case each party had a different understanding of the contract, and thus there was no mutual assent.

■ Due to Mr. Wilson's failure to list all of his moving traffic violations on his application, the amount of the premium to be paid was never agreed upon between the parties. This is, of course, one of the essential elements of the contract, without which mutual assent could not occur. While Worth was still apparently willing to insure Mr. Wilson, as indicated by Mrs. Liken's letter to Wilson on August 25, 1964, Mr. Wilson never responded to that letter letting Worth know "if the policy should be issued." In a situation where the testimony is conflicting as to the objective actions of Mr. Wilson and Mrs. Liken at the time the application was made, and where there is sufficient evidence to support the trial court's conclusion that there was no mutual assent between the parties as to the amount of the premium, the judgment below must be affirmed. Goode v. Powers, supra.

■ The third contention raised is that the trial court erred in concluding that the doctrine of estoppel is applicable only after a contract of insurance is in existence.

Our Supreme Court has adopted the doctrine of promissory estoppel as it is set forth in Sec. 90 of the Restatement of the Law of Contracts. Waugh v. Lennard, 69 Ariz. 214, 211 P.2d 806 (1949); Weiner v. Romley, 94 Ariz. 40, 381 P.2d 581 (1963):

> "'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' Restatement, Contracts Sec. 90."

However, mere belief by Mr. Wilson that he was insured does not cause the doctrine of promissory estoppel to come into play. Some action in words or conduct which is justifiably relied upon is required. While it is apparent that a promise of some kind is required, Williston on Contracts, Third Edition, Section 140, we believe as the trial court apparently did, that the promise was to insure Mr. Wilson as of August 17, 1964 if his application was accepted. This is what his application stated and what Mrs. Liken apparently related to him. The letter of August 25, 1964 also confirms this for it requests Mr. Wilson "to let us know if the policy should be issued." This is entirely consistent with the company's conduct throughout; that no insurance will be issued until acceptance was made by Worth.

It is apparent that Mr. Wilson thought he was getting immediate coverage, and because of this there was no meeting of the minds. Likewise, what Mr. Wilson believed will not bring about the doctrine of promissory estoppel, where the written and

ioral conduct of Worth and Mrs. Liken does not bring about the required promise. Waugh v. Lennard, supra.

We therefore conclude that the trial court was correct in holding that Mr. Wilson did not secure insurance from Worth. As we affirm the trial court on all the contentions raised by appellant Turner, we do not find it necessary to discuss the contentions raised by appellant Jensen, who adopted all the contentions raised by Turner, and whose briefs dealt solely with his right to appeal.

HOWARD, C. J., concurs.

KRUCKER, Judge (dissenting).

I dissent.

Mr. Wilson went to the Likens Insurance Agency to get automobile liability insurance so that he could drive his car into Davis Monthan Air Force Base. He filled out an application and paid Mrs. Likens $30.80, which was to be the first payment on a 90 day installment arrangement of premium payment. He then took his receipt and got admittance to the Base. I believe that from the time he paid his premium and got his receipt Mr. Wilson had interim coverage of insurance, until such time has he was formally accepted or rejected by the company.

The majority opinion rejects each of Mr. Wilson's arguments. They found no written binder existed between the parties. They found sufficient evidence to support the trial court's finding that there was no meeting of the minds as to the policy of insurance, and they rejected Mr. Wilson's argument of estoppel. I believe that none of these conclusions precisely answers the only pertinent question. Did Mr. Wilson have temporary terminable, interim coverage?

I believe the best rule of law is that found in a recent case, Allen v. Metropolitan Life Insurance Company, 44 N.J. 294, 208 A.2d 638 (1965). (Also see extensive citations for its position.) In that case a Mr. Allen agreed to purchase life insurance and filled out an application. Mr. Allen at the same time paid the first premium and received a receipt which provided that the premium would relate back to the date of the application *if* the company approved the application. Mr. Allen died of a coronary occlusion several weeks later and the company a week after the death declined the application and denied all liability. The court held the policy was in effect, as an interim policy. In so holding the court set forth the reasons which I believe, as a matter of law, dictate liability coverage here.

While insurance policies and binders for interim coverage are contractual in nature, they are not ordinary contracts but are "contracts of adhesion" between parties not equally situated In this case simply because the application form which Mr. Wilson had to fill out already contained a conditional clause, did not mean he had in any way bargained to so offer, or even had read it.

When the company takes an applicant's premium it makes its primary error. The very acceptance of the premium in advance tends naturally toward the understanding of immediate coverage however temporary and terminable it might be; any other advantage other than interim coverage is not what the lay applicant is generally seeking by the advance payment. See Simpson v. Prudential Insurance Co. of America, 227 Md. 393, 177 A.2d 417 (1962).

I believe that when confronted with such conditional receipts for premiums paid, recognition of interim coverage pending the company's approval or disapproval is just and equitable and fulfills the applicant's expectations while avoiding the dubious position that the insured to be must pay and await the company's good faith determination of insurability. As said in another case, Ransom v. The Penn Mutual Life Insurance Company, 43 Cal.2d 420, 274 P.2d 633 (1954):

"* * * it would be unconscionable to permit the company, after using language to induce payment of the premium at that time, to escape the obligation

which an ordinary applicant would reasonably believe he had undertaken by the insurer." 274 P.2d at 636.

In this case the expectations were additionally confirmed by the company itself when it wrote a letter to Mr. Wilson, dated just before the accident but received later, that it would have to raise the premium to cover an additional traffic violation but implying that they were still able to give him coverage.

I note that the cases I rely upon are filled with the compelling equities of life insurance cases, but I do not find the difference sufficient to vary the legal principles involved. I likewise believe that this position should prevail whether one considers the pre-paid premium as that inconsistent act which satisfies the principles of *equitable estoppel* or whether I find the pre-paid premium is a form of oral binder which makes conditions of acceptability as conditions subsequent and not conditions precedent. *Ransom,* supra.