J. Carl Fogle v. The Fidelity-Phenix Fire Insurance Company of New York, a Corporation, Appellant.—111 S. W. (2d) 154.

Division Two, December 17, 1937.

(1)

2

*Hogsett, Murray, Trippe & Depping* for appellant.

4

*Crossan & Hall, F. P. Stapleton* and *DuBois, Miller & Beavers* for respondent.

COOLEY, C.—Action to recover for loss and damage by fire, based upon an alleged contract of fire insurance. Plaintiff, Fogle, suing as assignee of the insured, Charles E. and Minnie A. Harding, husband and wife, owners of the burned property, recovered judgment for $3175.32. Appeal was granted defendant to the Kansas City Court of Appeals, where, on a rehearing, the judgment was reversed and the cause remanded, but by a divided court, one judge dissenting. On request of the dissenting judge the cause was certified to this court, pursuant to constitutional mandate, and is here for determination on the merits. The majority and minority opinions of the Court of Appeals appear in 99 S. W. (2d) 518 et seq.

The case was tried upon an amended petition which, after alleging in substance that plaintiff was a resident citizen of the State of New York and that defendant was a fire insurance corporation organized under the laws of that State, licensed to do business in Missouri, and that Charles E. and Minnie A. Harding owned the insured property, alleged that on December 20, 1931, the defendant, in consideration of

$158.79 paid to it by the Hardings "did agree to insure and did insure Charles E. and Minnie A. Harding against all direct loss or damage by fire in the total sum of fifty-five hundred dollars ($5500.00) and on . . . (property described, giving amounts on each of a number of items), said insurance being for a period of three years, beginning on December 20th, 1931, and terminating December 20th, 1934; that *said agreement was evidenced by defendant by its instrument in writing, filed herewith and marked Exhibit A.*" (Italics ours.)

Defendant, by its verified answer, denied generally the allegations of the amended petition and specifically denied having executed the contract or a contract such as pleaded by plaintiff, averring that the exhibit attached to plaintiff's petition was not a contract of insurance but only a portion of an application for insurance and that the actual contract was the policy described in and attached to the answer, a verified copy of which was attached to and filed with the answer. Said policy is numbered 0133466 and was offered in evidence as defendant's Exhibit F—but on plaintiff's objection was rejected by the court. The answer pleaded at length the provisions of said policy, including a provision that if the insured buildings should become "vacant, unoccupied or uninhabited and so remain for a period exceeding ten days, without written consent hereon . . . this entire policy shall be null and void." The answer also pleaded a "mortgage clause," attached to the policy, in favor of the Northwestern Mutual Life Insurance Company, which held a $4500 first deed of trust on the insured property. The answer pleads breaches by the insured of conditions of the policy, especially of the vacancy clause.

Plaintiff's reply denied generally the "new matter" (without other designation) set out in the answer, and denied that any written contract ever existed "as alleged in defendant's answer" but averred if the provisions of "such contract as alleged in defendant's answer were a part of such contract" plaintiff had fully performed them. If further reference to the pleadings is necessary it will be made in the course of the opinion.

The Hardings owned a farm of 175 acres in Johnson County on which were a dwelling house, barn and a number of appurtenant outbuildings. Part of the farm, 135 acres, on which were said buildings, was covered by a deed of trust securing $4,500 to the Northwestern Mutual Life Insurance Company. On December 20, 1931, Mr. Harding applied to Charles E. Lancaster, defendant's local agent, for insurance on said buildings. He (individually) signed and delivered to Lancaster a partially filled out printed form of application. It stated the amount of insurance requested on each building and that the insurance was to be for a period of three years from December

20, 1931, and contained this clause: "Loss, if any, payable to Northwestern Life Insurance Company . . . as interest may appear." Plaintiff introduced this application as his Exhibit 1. As introduced in evidence it bore at the top the notation "0133466" and had attached to it a paper headed "to attach to policy No. 0133466, name of assured C. E. and Minnie A. Harding, State of Mo. Date Chicago, 10-1-32, 19——, Endorsement," which paper made some changes in certain items of the coverage, not here material. As introduced in evidence said Exhibit I also had attached to it a "standard mortgage clause," which by its terms was to be attached to and form part of "policy No. 0133466," and was dated December 20, 1931. It also bore this endorsement:

"Name of Assured C. E. Harding.

"Notice is hereby taken that the within described property is owned jointly by C. E. Harding and his wife Minnie A. Harding.

"Loss, if any, payable accordingly.

"Attached to and subject to all conditions of Policy No. 0133466 of the Fidelity-Phenix Fire Insurance Co. of New York. Chicago 2-29-32."

It appears from Harding's testimony that these endorsements were made after he had signed the application. The last one above mentioned was made at his request. He testified that he had nothing to do with attaching the "mortgage clause." He further testified that at the time of making the application Lancaster examined, with him, the buildings and determined the amount to be written upon each and promised to write the insurance, for a period of three years from December 20, 1931; that the premium was to be $158.79, which he paid; that Lancaster said he would take "these papers" (evidently the application), fill them out and "return my duplicate policy to me and send the policy direct to Northwestern Mutual Life Insurance Company as they held the loan against the land;" that Lancaster filled out the blanks in the application, so far as they were filled at all, later, and after he, Harding, had signed the application. He testified that Lancaster said he would send or bring him a duplicate of his policy, and later did give him what he, Lancaster, said was "a duplicate of my contract, that is what I understood it was." Plaintiff was handed his Exhibit 2, which is the Exhibit A referred to in and attached to the petition. It is substantially the same as Exhibit 1 (application) above referred to. This followed:

"Q. He said it was a duplicate of your insurance contract? A. Yes, sir.

"By Mr. HOGSETT: Just a moment. We object. That is calling on the witness to vary the terms of the instrument, which on its face shows it is on a printed form and headed 'application' and shows that it is an application and not a policy and no insurance contract. It

is a printed form of application and shows on its face. It is an attempt to vary the terms of the printed instrument."

The court overruled the objection, defendant excepting. Plaintiff then, over defendant's objection, introduced in evidence said Exhibit 2. Harding also testified that on December 20, 1931, Lancaster told him his insurance would take effect "right now;" that said Exhibit 2 was the only writing he had received. When said Exhibit 2 was introduced defendant's counsel asked "may the record show that the exhibit you are passing to the jury is an exhibit which was attached to the amended petition and upon which the suit is predicated?" to which plaintiff's counsel replied, "Yes, sir."

The application (Exhibit 1) above referred to, as well as Exhibit 2, contains a direction "mail policy to agent," and it clearly appears from Harding's testimony that he understood and intended that if his application was accepted a written policy would be issued and by his approval and direction was to be sent to the mortgagee. Pursuant to such understanding the policy was issued and was mailed by the insurer to Lancaster, and by the latter transmitted to the insurance company, mortgagee. Harding himself did not actually see the policy prior to the fire, though, as stated, he contemplated and intended that a written policy would be issued and understood that such had been done. After the fire in question he made proof of loss, referring therein to policy No. 0133466.

In September, 1932, an old building called a smokehouse was burned and some slight damage was done to the dwelling and another building. That loss was adjusted and defendant gave Harding a check for $10 in settlement thereof, though Harding says he never cashed the check. Defendant claimed that the smokehouse was not covered. In the present suit there was a claim for $100 on that smokehouse, for which plaintiff recovered. For details concerning this see dissenting opinion in Fogle v. Fidelity-Phenix Fire Insurance Co., supra, 99 S. W. (2d) 518, l. c. 524, et seq. In March, 1933, there was a group of fires, of apparently incendiary origin, involving several of the insured buildings. These were extinguished by the Hardings. No substantial loss occurred and no claim was presented on account thereof. Thereafter, about April, 1933, the Hardings leased the premises to a tenant, Casey, and moved to Worth County. This fact was reported to defendant's agent and an endorsement was issued by defendant consenting thereto. Casey, on account of crop failure, etc., abandoned the premises in September, 1933. Thereafter and until the fire here in question, a period of some five months, the premises, including the insured buildings, were vacant and unoccupied, as the Hardings knew. No notice of such vacancy was given defendant, and such fact was unknown to it until after the fire here in question, and of course, therefore,

no consent was given by defendant for such vacancy. Defendant asserted at the trial herein that it would not have issued a vacancy permit on mortgaged farm property.

About midnight on February 12, 1934, while the buildings were still vacant, seven fires, of apparently incendiary origin, broke out at about the same time, in seven separate buildings, all covered by the insurance in question. It is not contended and there is no evidence tending to show that the Hardings had anything to do with any of these incendiary fires.

After the fires of February 12, 1934, defendant paid the mortgagee $1500, pursuant to the "mortgage clause" attached to the policy. The Hardings thus obtained credit for that amount on their debt to the insurance company. After the fire defendant's adjuster attempted to settle with Mr. Harding, first offering $1133.33 in settlement, later $1775,—"one half of the loss"—which offers Harding declined, saying he did not know what would be satisfactory to the mortgagee.

Defendant offered in evidence the policy it had issued, No. 0133466 (its Exhibit F), three times in the course of the trial, and upon the following theories: (1) That the application was not a contract of insurance but a mere offer or request for insurance and that said Exhibit F was the real contract: (2) that even if there was an oral contract the law presumes that the parties intended the contract should embrace the usual policy conditions, and in that connection it offered to prove that said policy did embrace such usual conditions; and (3) that the policy was competent evidence showing that the Hardings had collected a loss thereunder,—the $1500 paid to the mortgagee. The court rejected all of said offers. A more detailed statement of the facts appears in the two opinions in Fogle v. Fidelity-Phenix Fire Ins. Co., supra. If deemed necessary to state further facts in our disposition of this appeal same will be done hereinafter.

We think the trial court erred in refusing to admit in evidence defendant's Exhibit F, the policy issued by it, and that the error was material and prejudicial, necessitating reversal of the judgment. Plaintiff contended at the trial that his petition declared upon an oral contract of insurance and that the application, his Exhibit 1, and his Exhibit 2 (the Exhibit A referred to in and attached to the petition), were evidentiary of the oral contract he relied upon. [Devore v. Franklin Fire Ins. Co., 223 Mo. App. 1162, 25 S. W. (2d) 131.] Plaintiff's case on his part, was tried and submitted to the jury on the theory that he was suing on an oral contract of insurance, and his recovery was upon that theory. That there *may be* a valid oral contract of insurance seems not to be seriously disputed, and need not be discussed. But see, in effect so

holding, Baile v. St. Joseph Fire & Marine Ins. Co., 73 Mo. 371; Devore v. Franklin Fire Ins. Co., supra; McNabb v. Niagara Fire Ins. Co. (Mo. App.), 22 S. W. (2d) 364. [2] In our opinion plaintiff's petition can only be construed as declaring on a written contract and not upon an oral contract. It alleges that defendant agreed to and did insure the Hardings and that *said agreement* was evidenced by its instrument in writing, referred to in and filed with the amended petition. Plaintiff argues that by such allegation he meant only that said exhibit was evidence—some evidence—of the oral contract relied upon and which, as we understand him, he contends was otherwise sufficiently pleaded. He did not, however, rely upon said exhibit as, of itself, fully "evidencing" his claimed oral contract, but introduced oral evidence in addition. It is not usual or necessary to plead what amounts merely to evidence by which a pleaded cause of action is to be sustained. Plaintiff's amended petition (as his original petition, which was introduced in evidence), was in form appropriate to declare upon a written contract and we agree with the majority opinion of the Court of Appeals that it did so declare. The defendant so understood and construed it and framed its answer accordingly. It first offered its Exhibit F on that theory. If there was a written contract between the parties it could only have been said policy. It is conceded that neither plaintiff's Exhibit 1 (the application) nor his Exhibit 2 constituted a contract of insurance. Each, on its face, was and purported to be only a partially filled in application for insurance. Each contemplated, as shown on the face thereof, that, if accepted, a written policy would be issued.

However, as we have said, plaintiff tried his case upon the theory that his amended petition declared upon an oral contract and the court permitted him to proceed upon that theory. Without going into detail we think it sufficient to say that it appears from the record that defendant combatted that theory, contending that the suit was founded upon a written contract, but, when overruled by the court on that proposition attempted to meet plaintiff on that battle front, and on that issue again offered its Exhibit F as evidence of the usual conditions of policies issued by it, and in this connection offered to prove, by oral evidence, that said Exhibit F was the usual, regular, ordinary, standard form of fire insurance policy on farm property being used and issued by defendant at the time in question. These offers were refused.

In this connection it may be stated that when plaintiff indicated that he was trying the case on the theory of an oral contract and the court indicated that it was permitting trial on that theory, defendant did not file an affidavit of surprise, under Section 817, Revised Statutes 1929 (Mo. Stat. Ann., p. 1070), providing that no variance between pleading and proof shall be deemed material unless it shall

have misled the adverse party to his prejudice and that when it is claimed that a party has been so misled such fact must be proved to the satisfaction of the court by affidavit showing in what respect such party has been misled. Plaintiff contends that even if his petition be construed to declare upon a written contract the proof of an oral contract was merely variance and that defendant's failure to file the statutory affidavit precludes it from urging that matter on appeal. Contra, defendant argues that it constituted a complete failure of proof of the cause of action pleaded and that said statute has no application. We deem it unnecessary to decide that question because if the case is retried it will doubtless be on amended pleadings under which such question will not arise.

We think that even on the theory that the contract was oral the policy should have been admitted as tending to show the terms and conditions of the intended agreement. In Swinney v. Conn. Fire Ins. Co. (Mo. App.), 8 S. W. (2d) 1090, 1092 (2-3) it is said:

"It is also well settled that, if there had been no insurance certificate issued in this case, but only a parol agreement for insurance entered into, the law would presume, in the absence of proof to the contrary, that the parties intended that the insurance contract should contain the usual conditions of such contracts. [Vining v. Franklin Fire Ins. Co., 89 Mo. App. 311; Duff v. Fire Association, 129 Mo. 460, 30 S. W. 1034.]"

In Duff v. Fire Association, supra, 129 Mo. l. c. 464, the court quotes with approval from 1 May on Insurance (3 Ed.), section 23: "The terms of the agreement for a policy not specified are presumed to be those of the ordinary policies issued by the same insurers on similar risks." The suit was upon an alleged oral contract, it being further alleged that the defendant's agent promised to deliver a policy to the plaintiff but did not do so. It was contended that the petition was defective in that it failed to set forth the terms and conditions of the policy that was to have been issued and aver performance of such conditions. This court denied that contention, holding the petition sufficient, and saying, 129 Mo. l. c. 466, 30 S. W. 1034:

"Facts raised by merely legal implication cannot be constitutive facts necessary to be averred, in order to state a cause of action, under our system of pleading. Such constitutive facts are the actualities of the transaction. A legal implication, from those actualities, of other facts, may authorize the use of such implied facts to defeat a recovery, but cannot be essential to the statement of a cause of action which arises, if at all, upon the statement of the actual facts.

"If such implied facts need not be averred in order to state a cause of action, much less need they be averred for the purpose of making an anticipatory plea discharging their force and effect. It was

for the defendant to show that the actualities of the transaction in this case are subject to the implication, the protection of which it seeks, which it could only do by producing the form of policy which the association issues upon similar risks, containing conditions which must be performed before recovery can be had, and showing a breach of some such conditions. Unless such form, containing such conditions, be pleaded and produced by the defendant on the trial, no implication could arise that plaintiff's contract was made with reference to the particular conditions therein contained, and the plaintiff may recover on the actual completed oral contract of insurance without conditions, just as it was in fact made and set out in the petition.''

In the case before us the defendant did not plead the usual terms and conditions of policies issued by it, but in this respect we think this case is distinguishable from the Duff case. In the Duff case the petition declared upon an oral contract, pleading sufficient facts to constitute such contract. In the instant case the petition declared upon a written contract. Defendant was called upon to meet that pleading. It could hardly be expected to anticipate that plaintiff would present his case, or be permitted to present it, on the theory of an oral contract and to file an anticipatory answer to meet issues not presented by plaintiff's petition.

█ When, after vainly protesting that the petition declared upon a written contract, defendant attempted to meet plaintiff's contention that the suit was on an oral contract, it offered to prove, by a witness qualified to testify thereto, that the policy (Exhibit F) was the standard, regular and usual form of fire policy used by the defendant and other insurance companies writing farm policies in Missouri, and further offered and attempted to introduce the policy. To these offers plaintiff made this objection, which was sustained by the court, viz.:

''The plaintiff objects to the answer sought by this question for the reasons following: That the policy shows for itself its terms and is the best evidence. Second—the policy has already been excluded by the court. Third—that in any event this plaintiff could not be bound by any customary policy. That this case from the plaintiff's standpoint is based on an oral contract of insurance, complete in every respect, and containing all terms essential to make a valid and legal oral contract and could not be in any way affected by the customary policy or customary form of the defendant. In other words we have a complete oral contract of insurance, like any other contract. Not a thing lacking.''

The statute, Section 5829, Revised Statutes 1929 (Mo. Stat. Ann., p. 4459), requires fire insurance companies doing business in this State to file ''the form of policy for use'' by them in this State.

14

Assuming that defendant had complied with that statute it is argued that such filed form or a certified copy thereof was the best evidence. But the objection to the offer of proof as to the usual terms and conditions of fire insurance policies was not made upon that ground. The only objection along that line, as being best or secondary evidence, was that *the policy,* not the form presumably filed pursuant to statute, was the best evidence. Defendant was offering and trying to introduce in evidence that policy. We think it clear that a party may waive the objection that offered evidence is not ''the best'' evidence. Certainly, in the circumstances, plaintiff cannot urge that what he claimed was the best evidence—the policy—was not introduced when said policy was offered by defendant and upon plaintiff's objection was rejected by the court.

■ It appears that one reason, perhaps *the* reason, why the court refused to admit the policy in evidence was that it was not countersigned by Lancaster, defendant's resident agent, as required by Section 5902, Revised Statutes 1929 (Mo. Stat. Ann., p 4501). Lancaster testified that he ''overlooked'' countersigning the policy. The policy itself provided that it should not be valid until countersigned by defendant's vice president or ''the manager of the Farm Department at Chicago, Illinois.'' It was countersigned by the latter. When the policy was first offered plaintiff objected on the ground, in substance, that because the policy was not countersigned by the resident agent it was not a legal contract and not binding on plaintiff—in effect that it was void, at least as to plaintiff. The objection was sustained. The policy was not *void* for lack of countersignature by the resident agent. It could have been enforced by plaintiff against the insurer. [See Shelby v. Conn. Fire Ins. Co., 218 Mo. App. 84, 262 S. W. 686; Lumbermen's Mut. Ins. Co. v. Railroad Co., 149 Mo. 165, 50 S. W. 281; State ex rel. Chorn v. Hudson (Mo. App.), 222 S. W. 1049.] Whether or not the *insurer* could assert the validity of the policy as a contract, notwithstanding its failure to comply with the statute, we shall not here undertake to determine. When the policy was offered the second time it was in response to plaintiff's then asserted theory of a suit on oral contract and for the purpose of showing the usual terms and conditions of policies issued by defendant and other companies insuring farm properties in Missouri. Whether countersigned by the resident agent or not we think it should have been admitted for that purpose.

■ Defendant timely filed petition and bond for removal to the Federal Court. The petition alleged that defendant was a New York corporation and a citizen and resident of that State; that the Hardings were citizens and residents of Missouri; that plaintiff was a citizen and resident of New York; that the assignment of the cause of action to plaintiff was made for the sole purpose of fraudu-

lently attempting to prevent removal of the cause to the Federal Court. The trial court denied the petition for removal. On facts analogous to those presented in the instant case the United States District court, Western District of Missouri (by OTIS, J.), upon review of the authorities, denied a petition for removal. Under that decision the filing of the petition for removal herein did not deprive the circuit court of jurisdiction. [See also, Mecom v. Fitzsimmons Drilling Co., 284 U. S. 183, 52 Sup. Ct. 84, 76 L. Ed. 233.]

Other alleged errors are assigned in briefs of counsel which we think need not be discussed herein. In the event of another trial if such questions arise they can best be ruled under the pleadings and issues then presented.

The judgment should be reversed and the cause remanded. It is so ordered. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.