472. P.2d 1

**Maurice D. TURNER, and Dorel Jensen, and Kimberly Ann Jensen and Bimberly Lynn Jensen, minors, Appellants,**

v.

**WORTH INSURANCE COMPANY, a corporation, Appellee.**

**No. 9984–PR.**

Supreme Court of Arizona,
In Banc.

June 25, 1970.

Rehearing Denied Sept. 15, 1970.

Rees, Estes & Browning, by Paul G. Rees, Jr., Tucson, for appellant Maurice D. Turner.

Robertson & Fickett, P. C., by Richard C. Anderson, J. Michael Moeller, Tucson, for appellants Dorel, Kimberly Ann, and Bimberly Lynn Jensen.

May, Dees & Newell, by Willis R. Dees, Tucson, for appellee Worth Ins. Co.

McFARLAND, Justice.

This is an action for a declaratory judgment commenced by the appellee, Worth

Insurance Company (Worth) to determine if one Ivan Wilson was insured by Worth on the date of a fatal accident on August 23, 1964. Phyllis K. Jensen, wife and mother of the appellants, was killed while riding as a passenger in a vehicle operated by the other appellant, Maurice D. Turner, when it was involved in a collision with a car operated by Wilson. The Superior Court concluded that Wilson was not insured by Worth and the Court of Appeals affirmed. 11 Ariz.App. 403, 464 P.2d 990.

On August 17, 1964, Wilson went to the office of Likens Insurance Agency for the purpose of obtaining motor-vehicle-liability insurance. Mrs. Hedwig Likens was agent for Worth, among other companies, and there is no question as to her authority to bind the company for temporary insurance pending approval of an application, which is the crux of the matter here. Wilson explained to Mrs. Likens that he was employed at Davis-Monthan Air Base, and had to have insurance in order to drive his car on the base. He had previously applied to Farmers Insurance, and had received a binder which was terminated without a policy being issued because of his past driving record. Mrs. Likens had him complete an application for a special-risk policy in the amounts of $10,000 liability per person, $20,000 per occurrence and $5,000 property damage. On the bottom of the application, in bold-face print, was a statement to the effect that:

"NO COVERAGE IS IN EFFECT UNTIL A BINDER IN WRITING OR A POLICY IS ISSUED BY A POLICY WRITING OFFICE OF INTERNATIONAL SERVICE GROUP."

The words of importance are "a binder in writing or a policy." It is conceded that Worth never issued a policy, and, in fact, refused to insure Wilson by letter dated September 18, 1964. This letter was signed and forwarded to Wilson by Mrs. Likens,

which is a further indication that Mrs. Likens had authority to bind or decline coverage on behalf of her principal. The only question is whether there was temporary insurance.

The appellants here argue that there was an oral binder between Wilson and Worth; that there was a written binder evidenced by a receipt; and that Worth is estopped from denying coverage by reason of its subsequent acts. It is unnecessary to consider the issues of an oral agreement and estoppel since this Court is of the opinion that Worth, through its agent Mrs. Likens, bound itself to temporary liability insurance by virtue of a "binder receipt."

By whatever name it may be known, a "binder" for temporary insurance is a contract. Assuredly it is a contract in contemplation of a subsequent and more formal agreement, but by its nature it incorporates the terms of the prospective insurance contract, whether those terms are prescribed by law or are part of the customary policy issued by the insurer. See e. g. Gardner v. North State Mutual Life Ins. Co., 163 N.C. 367, 79 S.E. 806; Seiderman v. Herman Perla, Inc., 268 N.Y. 188, 197 N.E. 190. A binder has been well defined in Seiderman v. Herman Perla, Inc., supra, as follows:

"A binder, or binding slip, as it is sometimes called, constitutes a written memorandum of the important terms of a contract of insurance which gives temporary protection to the insured pending the investigation of the risk by the insurance company or until a formal policy is issued. When the binder was signed by the agent of the Globe Indemnity Company and delivered to the broker, the contract of insurance was closed and the binder became in effect the same as a regular insurance policy including by inference all the terms of a regular policy. * * *"

The basic terms of the above definition have been specifically adopted by our legislature and applied to liability insurance by § 20–1120, A.R.S., which provides:

"§ 20–1120. Binders

"A. Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable endorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.

"B. No binder shall be valid beyond the issuance of the policy with respect to which it was given, or beyond ninety days from its effective date, whichever period is the shorter.

"C. If the policy has not been issued a binder may be extended or renewed beyond such ninety days with the written approval of the director, or in accordance with such rules and regulations relative thereto as the director may promulgate."

■ Thus, either an oral or written contract can amount to a temporary policy of insurance whether it is termed a contingently accepted application or a binder. A "binding receipt" was explained in Black v. Industrial Accident Commission, 215 Cal. 639, 12 P.2d 640, as:

" * * * a cover note, binding slip, certificate, or memorandum of insurance which may answer the purpose of a more formal policy or operate as a temporary expedient until the policy itself can be issued. * * * "

In the instant case we have a "binding receipt" which reads as follows:

**LIKENS INSURANCE AGENCY**

2202 SO. CRAYCROFT ROAD     PHONE: 793-0611
TUCSON, ARIZONA

NO. 02810

DATE Aug 17 1968

RECEIVED FROM Ivan Wilson

Thirty and 80/100                    DOLLARS $ 30.80

FOR Appl. 10/20/5 Liability

AMOUNT OF ACCOUNT $ 712.00
AMOUNT PAID ..... $ 30.80     THANK YOU.
BALANCE DUE ..... $ financed
CASH ☐  CHECK ☒  M. O. ☐

LIKENS INSURANCE AGENCY

BY

Form No. 1793
[A2347]

■ There was some dispute in the trial court as to the meaning of the abbreviation "appl." Mrs. Likens testified that this referred to the fact that only an application was intended—not a binder. Of course, it could also reasonably mean that the money received was "applied" to the expected policy of insurance, and, if there is an ambiguity involved, it will be decided in favor of the insured. Dairyland Mutual Ins. Co. v. Andersen, 102 Ariz. 515, 433 P. 2d 963. This familiar rule of construction, normally associated with the insurance contract itself, is equally applicable to a binder. See Annotation, 2 A.L.R.2d 943, 955–956. However, even accepting Mrs. Liken's statement that the word "application" was intended, it means but little since it merely

is descriptive of what occurred at the time —that Wilson made application for insurance; a fact thoroughly acknowledged by all parties.

But the remainder of the receipt sets forth the material terms of a contract of insurance. It indicates that a consideration of $30.80 was received; that it was accepted by Likens Insurance Agency (the check for this amount was deposited to Likens account the following day); that the contracting party was Ivan Wilson; that it was for a "10/20/5 liability" policy; that the total amount of the account was $72.00 less the $30.80 paid; and that the balance due would be financed—which indicates that the negotiations exceeded the stage of a simple application. This receipt was signed by "H. Likens." In addition, the application itself bears a hand-written notation that the $30.80 constituted a "down payment."

The application on its face required that a binder be in writing. The "binder receipt" complied with this requirement by the very tenor of the writing thereon, and contains no disclaimer to the contrary. Therefore, on its face, the receipt constitutes a contract of temporary insurance.

However, it is claimed by the insurance company that the elementary contractual ingredient of intent was lacking. It is not seriously disputed that Wilson came into the office of Likens with the expressed intent of obtaining insurance—not in the future—but instantly, in order to obtain passage onto the place of his employment— Davis-Monthan Air Base. Without evidence of insurance he could not obtain a "sticker" to operate his vehicle on the base; and evidence of possible insurance at some future date would be of little help. In view of this there can be little doubt as to his intent to be bound to a contract of insurance immediately, and he underlined this fact by the payment of almost half the premium.

On the other hand, Mrs. Likens admitted that her intent was to have Wilson insured, temporarily, on the date of the application. Part of her testimony on this point was:

"Q And did you tell Mr. Bearclaw at that time, that it was your intention that Mr. Wilson was covered at the time, that is on the 18th day of August, 1964?

"A Yes.

"Q And that was your recollection on the 16th day of September, 1964, isn't that correct?

"A Must have been.

"Q Now, isn't it true, Mrs. Likens, that it was your intention on the 17th day of August, 1964, to insure Mr. Wilson as of that time?

"A Yes, subject to the company—

"MR. DEES: I object, it's not—

"A Subject to the approval of—

"MR. REES: I move to strike and I join in the objection.

"THE COURT: Sustain that part of the answer giving the—I mean, beginning with the word 'subject', that is stricken.

\* \* \* \* \* \*

"Q You never did reject or attempted to reject Mr. Wilson's alleged application until your letter to him of September 18th, is that also correct?

"A Yes.

"Q I think you told Mr. Rogge, that it was your intent Mr. Wilson had coverage when he walked out the door of your office?

"A Yes.

"Q Is it not correct, you had used this same procedure many, many times before for service men and government employees?

"A Yes.

"Q It is your intention now, in these instances when you give a receipt, they can use this to get a permit to get on the Base, as proof of insurance in effect?

"A That insurance had been issued.

"Q Yes, that the policy will come to them at a later time?

"A Yes.

"Q But they have insurance when they walk out the door?

"A Not every one of them.

"Q But, in this case, it was your intent, isn't that just what you said?

"A It was my intention that the man would be insured.

"Q Thank you. It was your intention he was covered at that time, that's when you handed him the receipt, is it not correct?

"A My intention was that, yes."

Worth, in its brief, attempts to explain away this testimony on the basis that the intent was to cover Wilson from the date of application on the condition that Worth would subsequently accept the risk and issue its policy retroactive to such date. Obviously, such a rule would permit an insurer to hold itself immune from liability during the period while it considers whether to accept or reject the application, and then, if it accepts the risk, to assess a premium for the time that it was not obliged to assume liability. The conflicting theories on this subject were well set forth in McAvoy Vitrified B. Co. v. North American L. Assur. Co., 395 Pa. 75, 149 A.2d 42, in which case the court rejected the foregoing doctrine:

" ' "The courts in several jurisdictions have construed clauses similar to the one involved here. A number of decisions have held, in accordance with defendant's view, that no contract of insurance exists until the insurer has been satisfied as to an applicant's acceptability, and 'that the provisions that the insurance shall be in force from the date of the application means that, if and when the company is satisfied, the contract shall be considered to relate back and take effect as of that date. Mofrad v. New York Life Ins. Co., 10 Cir., 206 F.2d 491; Cooksey v. Mutual Life Ins. Co., 73 Ark. 117, 83 S.W. 317; Maddox v. Life & Casualty Ins. Co. of Tenn., 79 Ga.App. 164, 53 S.E.2d 235; Gerrib v. Northwestern Mut. Life Ins. Co., 256 Ill.App. 506; Gonsoulin v. Equitable Life Assur-

ance Society, 152 La. 865, 94 So. 424; Bearup v. Equitable Life Assurance Society of United States, 351 Mo. 326, 172 S.W.2d 942; Raymond v. National Life Ins. Co., 40 Wyo. 1, 273 P. 667.

" ' "On the other hand, a number of courts have held that the provisions to the effect that the insurance shall be in force from the date of the application if the premium is paid gives rise to a contract of insurance immediately upon receipt of the application and payment of the premium, and that the proviso that the company shall be satisfied that the insured was acceptable at the date of the application creates only a right to terminate the contract if the company becomes dissatisfied with the risk before a policy is issued. Gaunt v. John Hancock Mut. Life Ins. Co., 2 Cir., 160 F.2d 599, 601–602; Occidental Life Ins. Co. of California v. Lame Elk White Horse, D.C. Mun.App., 74 A.2d 435, 438–439; Reck v. Prudential Insurance Company of America, 116 N.J.L. 444, 184 A. 777, 778; Duncan v. John Hancock Mutual Life Insurance Co., 137 Ohio St. 441, 31 N.E.2d 88, 90–91; Albers v. Security Mut. Life Insurance Co., 41 S.D. 270, 170 N.W. 159, 160; see Reynolds v. Northwestern Mutual Life Insurance Co., 189 Iowa 76, 176 N.W. 207, 208–209; cf. Stonsz v. Equitable Life Assur. Soc., 324 Pa. 97, 187 A. 403, 405–406, 107 A.L.R. 178 [stating that this view represents a trend to construe the conditions liberally]; Western & Southern Life Insurance Co. v. Vale, 213 Ind. 601, 12 N.E.2d 350, 354–355." ' "

The intentions of the parties in the instant case were identical. Mr. Wilson intended that he should be insured for "10/20/5" on the date of his application, and he paid the premium therefor. Mrs. Likens intended that Mr. Wilson should be insured for "10/20/5" on the date of his application, and accepted the premium therefor. The transaction was evidenced by a receipt which set forth the material terms of the agreement. Any greater "meeting of the minds" would require them

to bump their heads together. There obviously was a contract of temporary insurance.

Several collateral matters arose during the course of this case; letters written between the parties before Worth declined to continue insurance on Wilson but after the accident. The accident arose during the period of insurance, and the liability became fixed, so that any subsequent disclaimers are irrelevant.

This is a Declaratory Judgment action to determine if Wilson was insured at the time of the accident. We have determined that he was insured by Worth, and it matters not whether one or all the plaintiffs in any future tort actions obtained this ruling, since our decision is limited only to that question.

The decision of the Court of Appeals is vacated. The judgment of the Superior Court is reversed, and the matter is remanded for further proceedings not inconsistent with this opinion.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.