**Rod RUSSELL d/b/a Galva-Foam Steel Docks et al., Plaintiffs-Respondents,**

v.

**RELIANCE INSURANCE COMPANY, Defendant-Appellant,**

and

**Farmer-Foster Insurance Agency, Inc., Defendant.**

**Nos. 12318, 12642.**

Missouri Court of Appeals, Southern District, Division Two.

Dec. 14, 1982.

Motion for Rehearing and to Transfer to Supreme Court Denied Jan. 5, 1983.

Application to Transfer Denied Feb. 23, 1983.

William Icenogle, Icenogle, Drover & Icenogle, Camdenton, for plaintiffs-respondents.

Wiley Morrison, Stanley W. Baker, Morrison, Baker, Neds & Odneal, Raytown, for defendant-appellant.

Charles E. McElyea, Camdenton, for defendant.

MAUS, Presiding Judge.

The petition in this action is in two alternative counts. The sole defendant in Count I is the appellant insurance company. The

sole defendant in Count II is an independent insurance agency. A summary of the allegations of Count I follows. The plaintiff[1] was in the business of constructing boat docks. On April 20, 1977, the insurance company issued a policy to the plaintiff, a copy of which was attached to the petition and incorporated therein. In 1977, the plaintiff contracted to construct a boat dock for Jack Gilbert on Lake Buchanan, Texas. On or about November 1, 1977, the uncompleted boat dock was "totally destroyed by cyclone, tornado or windstorm." The insurance company wrongfully refused to pay the plaintiff under the policy referred to for its loss in the amount of $12,000, for which he prayed judgment. The plaintiff also sought a penalty and attorney's fees for the insurance company's alleged vexatious refusal to pay.

The policy attached to the petition was entitled "Installation Floater." The insured property was declared to be "materials necessary for construction of floating boat docks." The policy insured against "all risks of direct physical loss of or damage to the described property from any external cause except as hereinafter excluded." Item IV provided: "This policy does not insure against loss or damage" caused by any one of eleven enumerated perils including loss "caused by flood, meaning inundation, waves, tide or tidal waves, high water, or overflow of streams or bodies of water, whether driven by wind or not (property in transit excepted)."

Count II incorporated the basic allegations of Count I. The additional allegations thereof were as follows. The plaintiff requested the insurance agency to secure for the plaintiff "a policy of insurance insuring him against risk of loss by damage to floating steel docks while the same were under construction . . ., a so-called 'builders' risk policy.'" However, it was alleged the policy referred to in Count I was delivered to plaintiff and the insurance agency was negligent in not ascertaining "that said policy was not a 'builders' risk policy' as plaintiff had requested and ordered, but rather an 'installation floater (broad form)' policy." In the alternative, in the event the plaintiff did not recover against the insurance company, Count II prayed judgment against the insurance agency for $12,000.

With the issues so presented by the petition, the following is a resume of the salient evidence. The trial court made extensive findings of fact as well as reaching conclusions of law. Except where otherwise noted, the resume is consistent with those findings of fact.

The plaintiff had, for approximately ten years, engaged in the business of constructing steel boat docks on lakes throughout the Midwest. On April 12, 1977, the plaintiff entered into a contract to construct for Jack Gilbert an eight-well covered boat dock on Lake Buchanan, Texas. Construction started in May and by the end of June, the dock was substantially complete. In June, because of improper anchoring, the dock was blown from its original position onto Gilbert's boat ramp. Gilbert called Russell (managing officer and sole shareholder of the corporate plaintiff) informing him that the boat dock had been improperly anchored, had many defective welds and other defects. Russell sent his construction personnel to repair the welds and make additions to the anchoring. In August, 1977, Russell went to Lake Buchanan primarily to collect the balance he contended was due under the contract. While there, he inspected and took pictures of the dock. Russell admitted the dock was not yet properly anchored. Gilbert, who testified by deposition, stated that the dock was not fully repaired and that he pointed out the defects, including at least four defective welds to Russell. He further testified Russell said that further repairs and additions would be made. He also testified that Rus-

---

1. The action was originally filed in the name of Russell as an individual. However, by order, a corporation wholly owned by Russell was added as a plaintiff. It was further ordered and agreed to that references to "plaintiff" shall refer to both party plaintiffs. As used in this opinion, unless otherwise required by the context, the term "plaintiff" shall refer to both party plaintiffs.

sell told him they had a new welder and that he wasn't watched closely enough and that "[h]e was responsible." Russell admitted it was possible he made such a statement. No additional work was done to the dock after Russell was there and Gilbert testified that it remained in a defective condition. Gilbert further testified that in the first week of November, 1977, Lake Buchanan experienced "three northers." He repeatedly stated that a norther was not a storm, but a wind from the north of approximately 15 to 20 m.p.h. that blew about 24 to 48 hours. Such a norther produced waves 2½ to 3 feet in height. The first norther began to destroy the boat dock. When the third norther had exhausted itself, the boat dock as such was destroyed. Gilbert observed that the wind itself did not damage the boat dock, but the destruction was caused by the dock working up and down in waves until it fell apart.

While much of the same was admitted over the objection of the insurance company, the evidence relating to the plaintiff's purchase of insurance may be summarized as follows. Russell testified that the plaintiff first purchased insurance in 1972 after the company suffered a loss due to a storm. At that time he asked the agency to "get me some coverage to protect me on the docks while I was building them." Upon redirect, he said he wanted insurance to cover any loss he may have from any kind of loss. He was aware the plaintiff's insurance was changed from an individual policy basis to a reporting basis. However, he had not read and did not know the terms of any policy that he received.

The insurance agent testified that when Russell sought insurance, he was primarily interested in windstorm coverage. Initially, the insurance agency obtained for the plaintiff a builders' risk policy for each construction project. In 1976 the insurance company was asked to provide builders' risk coverage upon a reporting basis. There is an indication this change was suggested by an officer of the insurance company. By a letter, the claims manager of the insurance company stated the company was considering the plaintiff's claim in question on the basis of builders' risk coverage.

A builders' risk policy was introduced and identified as the type of policy that had been issued to the plaintiff. This policy insured against specified perils including fire and lightning, windstorm and hail. It excluded "loss caused by, resulting from, contributed to or aggravated by ... waves ... whether driven by wind or not."

The trial court declared that the occurrence of windstorms during November 2—9, 1977, created the inference that the proximate cause of the destruction of the dock was windstorm. It then found the exclusion pertaining to loss caused by waves, whether driven by wind or not, was ambiguous and not applicable to a floating boat dock. It found the testimony of Gilbert that the dock was destroyed by waves was not credible evidence. Upon the basis of these findings, the trial court rendered judgment for the plaintiff against the insurance company for $9,916.03. The prayer for a penalty and an attorney's fee for vexatious delay was denied.

One of the insurance company's points is based upon the following argument. By its petition the plaintiff sought recovery upon an "installation floater" policy. However, the judgment of the trial court is not for the value of the materials (insured under installation floater policy) but is based upon a completed structure (insured under a builders' risk policy). Therefore, the plaintiff contends the trial court erred in granting relief beyond the scope of the pleadings.

By this point there is presented to the court the question of whether or not, under a petition seeking recovery upon a designated insurance policy, a court may reform that policy. The general topic of the necessity of reformation in a separate action or under a separate count is the subject of many decisions and much legal literature. 4A Appleman, Insurance Law and Practice § 2912 (1969); 43 Am.Jur.2d Insurance § 358 (1982). Recovery without prior reformation has been generally allowed in regard to so called "simple errors" in the policy as issued. Annot., Insurance—Refor-

mation—Person Insured 25 A.L.R.3d 580 (1969); Annot., Property Insurance—Reformation 25 A.L.R.3d 1232 (1969). In this state that doctrine has been recognized in regard to a mistake in an application, *Lorenz v. Bull Dog Automobile Ins. Ass'n.*, 277 S.W. 596 (Mo.App.1925), and in regard to a street address, *Sloss v. Farmers Mutual Automobile Insurance Co.*, 350 S.W.2d 446 (Mo.App.1961). The doctrine has been declared applicable to prevent an insurance company from relying upon a breach of the policy by the insured known to the company to exist at the time the policy was issued. *Hearsh v. German Fire Ins. Co.*, 130 Mo. App. 457, 110 S.W. 23 (1908).

■ However, it is not clear that such a doctrine extends to a more substantial modification of the language of a policy, such as the perils insured against or excluded. Annot., Insurance—Risks—Reformation 32 A.L.R.3d 661 (1970). Generally, a plaintiff may not declare upon one contract and recover upon another. *Fogle v. Fidelity-Phenix Fire Ins. Co. of New York*, 342 Mo. 1, 111 S.W.2d 154 (1937). Also see 20B Appleman, Insurance Law and Practice § 11828 (1980). The question of recovery upon a policy as written may be presented to a jury. The question of reformation of a policy is an equitable matter for a decision by the court. *St. Louis Cty. Nat. Bank v. Maryland Cas. Co.*, 564 S.W.2d 920 (Mo.App. 1978). The quantum of proof required for reformation is evidence that is clear, cogent and convincing. *Erickson Refrigerated Transp., Inc. v. Canal Ins. Co.*, 474 S.W.2d 337 (Mo.App.1971), *Helmkamp v. American Family Mutual Insurance Co.*, 407 S.W.2d 559 (Mo.App.1966). Where recovery is based upon a policy not issued, or upon language not used, fairness seems to demand that reformation be sought in a separate action or count. It certainly is the better practice. For example, see *Grossman Wrecking Co. v. Bituminous Casualty Corp.*, 518 S.W.2d 719 (Mo.App.1974), *Grossman Iron & Steel Co. v. Bituminous Cas. Corp.*, 558 S.W.2d 255 (Mo.App.1977).

As noted, the judgment of the trial court was based upon its determination the dock was destroyed by windstorm, the wave exclusion was not applicable and the evidence the dock was destroyed by waves was not credible. It is not clear whether the trial court based its judgment upon the installation floater policy incorporated in the petition or a reformation of that policy to the terms of a builders' risk policy. However, because of the similarity of the crucial terms of the two policies, it is not necessary for this court to decide the stated question in regard to reformation.

■ If the plaintiff's right to recover was based upon the installation floater policy, the burden was upon the plaintiff to establish the loss was the result of an "external cause." Annot., "All Risks" Insurance—Coverage 88 A.L.R.2d 1122 (1963). Under such a policy, it was the burden of the insurance company to establish the defense that the loss was the result of an excluded peril. *Johnson v. Kansas City Fire & Marine Insurance Co.*, 364 S.W.2d 68 (Mo.App.1962); *Grossman Wrecking Co. v. Bituminous Casualty Corp.*, supra. If the plaintiff's right to recover was based upon a builders' risk policy, the burden was upon the plaintiff to establish a "direct loss caused by . . . windstorm." Under the facts of this case, it is not necessary to consider the intricate relationship of that burden and the burden upon the insurance company to establish an exclusion. *Niagara Fire Ins. Co. v. Muhle*, 208 F.2d 191 (8th Cir.1953); *Lynch v. Travelers Indemnity Company*, 452 F.2d 1065 (8th Cir.1972); Annot., Windstorm Insurance—"Direct Loss" 65 A.L.R.3d 1128 (1975); Annot., Windstorm Insurance—Causes of Loss 93 A.L. R.2d 145 (1964). Under either policy the plaintiff had no right to recover if the loss was caused by an excluded peril. *Franklin v. Farmers Mut. Ins. Co.*, 627 S.W.2d 110 (Mo.App.1982).

■ Each policy excluded damage caused by waves, whether driven by wind or not. The trial court found this exclusion as applied to a floating boat dock to be ambiguous and not applicable. It is true that if the parties to a contract of insurance intend to insure against designated risks

and an exclusion would cancel that insurance, such an exclusion has been held to be ambiguous and of no effect. *Grossman Iron & Steel Co. v. Bituminous Cas. Corp.,* supra. However, "[i]nsurance contracts should be construed by the same general rules applicable to other written contracts.... Where there is no ambiguity, there is no room for construction, and the unequivocal language of the contract must be given its plain meaning unless contrary to public policy or positive law.... Of course, if the contract is reasonably open to different constructions, the one most favorable to the insured must be adopted; but that principle does not authorize a perversion of language or the exercise of inventive power...." *Ward v. State Farmers Mutual Tornado Ins. Co. of Mo.,* 441 S.W.2d 1, 3 (Mo.1969). Also see *Hardin v. Ray,* 404 S.W.2d 764 (Mo.App.1966).

The language of the exclusion in question is clear. *Madison Block Pharmacy v. U.S. Fidelity,* 620 S.W.2d 343 (Mo. banc 1981). There is no basis to say the application of this exclusion would cancel the insurance extended by the insuring clauses of either an installation floater policy or a builders' risk policy. There is no evidence that a properly constructed and anchored boat dock is less subject to the separate peril of wind as distinguished from the peril of waves than a pier, a boat house or a beach front house. Yet, the exclusion is consistently held valid as used in insurance policies on such structures. *Arjen Motor Hotel Corp. v. General Acc. F. & L. Assur. Corp.,* 379 F.2d 265 (5th Cir.1967); *O'Meara v. American States Insurance Company,* 148 Ind.App. 563, 268 N.E.2d 109 (1971); *Morehead v. Allstate Insurance Company,* 406 F.2d 122 (5th Cir.1969); *Newman v. Great American Ins. Co.,* 86 N.J.Super. 391, 207 A.2d 167 (1965); *Hardware Dealers Mut. Insurance Co. v. Berglund,* 393 S.W.2d 309 (Tex.1965); *Wheelock v. American Fire & Casualty Company,* 414 S.W.2d 61 (Tex.Civ. App.1967). The basis for such an exclusion is clearly set forth in *Wheelock* and *Berglund.* "While the language in the Exclusions provision purporting to exclude those losses 'caused by, resulted from, contributed to or aggravated by any of' the perils enumerated in that provision may appear inordinately comprehensive, it cannot for that reason alone be held to give rise to ambiguity." *Arjen,* supra. The contract of insurance was issued and accepted upon the basis of this exclusion and it must be given effect. *Madison Block Pharmacy v. U.S. Fidelity,* supra; *Ward v. State Farmers,* supra; *Adams v. Manchester Insurance & Indemnity Company,* 385 S.W.2d 359 (Mo.App. 1964).

■ However, the exclusion will not bar plaintiff's recovery if the loss was, as determined by the trial court, caused by windstorm. The only evidence dealing directly with the cause of the loss is the testimony of Gilbert. The trial court found Gilbert's testimony was not credible except in regard to the execution of the construction agreement, the delays incurred in the completion of the boat dock, that windstorms occurred and that the boat dock was destroyed before it was completed. The portion of Gilbert's testimony found not credible concerned the defective construction of the boat dock and that it was destroyed by waves. By way of qualification, Gilbert stated that he had been in construction business for more than 30 years, he worked for a mill and elevator around machinery for 12 years and knew what a weld was supposed to be. The trial court assigned no reason for the rejection of his testimony on the latter two subjects.

Other evidence corroborates the defective construction of the boat dock. Russell did not deny that he told Gilbert the plaintiff had a new welder that was not watched closely enough and that he was responsible. It was undisputed that Russell sent his employees to attempt to correct defective welds and an improper anchoring system. Gilbert detailed defects in the boat docks after these attempted repairs and stated that Russell assured him they would be corrected. At one place in his testimony, Russell stated that subsequent to his trip to the boat dock, Gilbert did not complain about the defective construction of the dock. However, at another place in his

testimony, Russell admitted receiving a subsequent letter from Gilbert's lawyer advising Russell that the boat dock yet had defective welds and anchoring system. Russell admitted that the plaintiff had not completed the correction of the anchoring system.

It was apparent that Gilbert was antagonistic toward Russell because of the admitted improper construction and anchoring of the boat dock. However, his testimony was given in a straight-forward manner. For example, in regard to the cause of the destruction of the boat dock he said: "The dock set there and just worked itself. The waves just worked it up and down until it—the angles began to break and it began to fall apart." "The only thing the wind did in my opinion was cause the waves."

Gilbert personally observed the boat dock during the period of November 2—9, 1977. His testimony concerning the weather conditions and the cause of the destruction of the dock was in no way impeached. The wind speed of 15 to 25 miles per hour was not excessive. There was no evidence that any other structure in the area suffered the slightest damage from the northers. Gilbert's testimony concerning causation was corroborated by the uncontradicted evidence of defective construction and anchoring. Russell's testimony established that the roof on a boat dock is the most vulnerable part of the structure. For this reason, Russell had boat docks without roofs excluded from the insurance coverage. Gilbert's testimony is unquestionably corroborated by pictures taken on November 2, 1977, showing the condition of the lake during the norther and the fact that the interior of the floor of the boat dock was breaking up and there was no damage to the roof.

Gilbert's testimony was presented by deposition. The duty of this court "to give due regard 'to the opportunity of the trial court to have judged the credibility of witnesses' as provided in Rule 73.01–3(b), V.A.M.R., has little or no significance here for the entire testimony of witnesses on the concerned issue was proffered via depositions and transcribed recorded statements secured by an insurance representative. The trial judge in this case neither saw nor heard the witnesses and, consequently, had no better opportunity than we to judge of their credibility through appearance, demeanor and the nuances of tonal variations." *Cameron Mut. Ins. Co. v. Chitwood*, 609 S.W.2d 492, 493–494 (Mo.App.1980). This court has a firm belief the only credible evidence is that the boat dock was destroyed by the excluded peril of waves.

The judgment on Count I is reversed and the judgment on that count is entered in favor of the defendant insurance company. By necessity, the judgment dismissing Count II is reversed. *Capitol Stores, Inc. v. Storms-Green Constr. Co.*, 346 S.W.2d 549 (Mo.App.1961). The case is remanded for the trial court to consider and make findings and enter a judgment on Count II.

HOGAN and PREWITT, JJ., concur.