**William R. PAPE and Susan A. Pape, Appellants,**

v.

**MID–AMERICA PREFERRED, INSURANCE COMPANY, Respondent.**

**No. WD 38916.**

Missouri Court of Appeals, Western District.

Sept. 22, 1987.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 1987.

Donald E. Raymond, Raymond, Raymond and Owens, Kansas City, for appellants.

May Knaus Lecluyse, George T. O'Laughlin, Kansas City, for respondent.

Before SHANGLER, P.J., and PRITCHARD and CLARK, JJ.

CLARK, Judge.

William R. and Susan A. Pape, plaintiffs below, sued respondent, Mid-America Preferred Insurance Company, on an insurance contract for a burglary loss. The trial court directed a verdict for the defendant at the close of the evidence and the Papes appeal.

The facts of the case were not disputed in any significant respect. Early in 1983, appellants moved to Kansas City and purchased a home. One Klopper, a real estate agent who participated in the real estate transaction, volunteered to obtain property insurance for appellants who were not acquainted with any source in Kansas City for purchasing a policy. Klopper contacted a friend, Roger Klein, and told him appellants required a homeowners policy for $70,000 on their new residence. At the time, Klein owned and operated an office as an independent insurance agent. He had an agency agreement with respondent, among other companies he represented, authorizing him to contract for insurance on respondent's behalf.

Klein received no order direct from appellants and dealt only with Klopper in processing the order for insurance. The only instructions as to the nature of the policy to be written were that it be a homeowners form in the principal amount stated. Upon receipt of the order from Klopper, Klein bound the risk under respondent's name and issued a document known as a binder. The purpose of a binder is to provide evidence of insurance coverage for the period until the actual policy has been written and delivered. Of necessity, a binder does not include all the terms of the policy and usually states only the subject matter, the risk insured against, the duration of the binder, the amount of the coverage and the amount of the premium. *Hay v. Utica Mutual Insurance Co.*, 551 S.W. 2d 954, 955 (Mo.App.1977).

The insurance binder issued in this case by Klein on behalf of respondent showed the subject matter to be appellants' dwelling and the risks insured and the amounts of coverage to be as follows:

| HO-3 | Dwelling | $70,000 |
| | Appurtenant Structures | 7,000 |
| | Personal Property | 35,000 |
| | Loss of Use | 14,000 |

The binder also included the following statement:

> This insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company.

According to the evidence, the term "HO-3" used in the binder refers to the standard form of homeowners insurance policy used in Missouri generally and by respondent in particular. Under that form and the rates which respondent maintains, the purchaser of such a policy obtains not only fire insurance on the structure of the home itself, but also the other coverages listed on the binder, including insurance on contents, shown as personal property. The amounts of such additional coverages included within the gross premium are calculated by applying set percentages to the principal amount of insurance, unless other coverages in other amounts are specifically ordered. In the case of contents coverage, the insured automatically is given insurance equal to one-half of the amount for which the dwelling is insured.

The immediate necessity for evidence of the homeowners insurance was to facilitate closing the loan which appellants were obtaining to purchase the property. After preparing the binder, Klein sent copies to the mortgage company as instructed by Klopper, and he also sent a copy to respondent with details necessary for writing the policy. No copy was mailed to appellants, but within a few days, William Pape did receive a copy, apparently from the mortgage company. Pape paid the premium in the amount which Klopper reported to have been quoted by Klein.

On the night of April 13, 1983, appellants' house was burglarized and various items of personal property were taken, particularly a quantity of silverware. The event was reported to the police and to Klein who relayed the information to respondent. An adjuster was assigned and a proof of loss was taken. As of the date of the burglary and presentation of appellants' claim, the homeowners policy had not been delivered to appellants. A policy had in fact been written by respondent within a few days following receipt of the order, but it was sent to Klein for delivery to the insured, a customary practice in such cases. Klein had not sent the policy to appellants, however, because the premium was higher than the amount he had quoted to Klopper. In the interval which followed his receipt of the policy, Klein was attempting to secure information for transmittal to respondent which he believed would support credits against the premium billed. The efforts were unsuccessful and the policy was eventually delivered, albeit after the burglary had occurred.

The issue in the case and the dispute between appellants and respondent was the amount of coverage which the insurance binder provided for silverware. According to appellants the value of the silverware taken in the burglary was $8000.00. Respondent contended that the limit of the liability for such personal property was $1000.00, which respondent was prepared to pay. That contention was based on language in the HO-3 standard policy providing as follows:

> Special Limits of Liability. * * * The Special Limit for each following numbered category is the total limit for each occurrence for all property in that numbered category.
>
> *　　*　　*　　*　　*　　*
>
> 7. $1,000.00 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware.

Respondent did also have a form of endorsement which could be attached to the homeowners policy and which would insure silverware and similar items for full value. If such an endorsement were issued, an additional premium charge was made.

Appellants refused the claim payment within the policy limitation on silverware contending the binder which showed coverage for personal property to be $35,000.00 entitled them to full compensation for the loss. This suit followed and on the evidence summarized above, the court directed a verdict for respondent.

Appellants' first three points briefed and argued advance essentially one point of error. The contention is that appellants made a submissible case by proof of the insurance binder and the failure by respondent to deliver the insurance policy with its limitation on coverage before the loss in question occurred. Appellants assert that the insurance binder was a separate insurance contract which covered all appellants' personal property for loss by theft to a limit of $35,000.00. They say the policy with its coverage limitation did not operate to restrict the liability limit because it was not delivered to nor accepted by appellants until after the loss. On these facts and contentions, appellants argue that the court erred in directing a verdict for respondent.

The problem with appellants' contention is that it overlooks the language of the binder wherein the terms of the policy to be issued are incorporated by reference as a part of the binder agreement. There was no dispute in the evidence that the standard terms of a homeowners policy used by respondent, and generally by other insurance companies conducting business in the state, restrict coverage on silverware and similar valuables to $1000.00 unless the policyholder specifically requests and pays the premium for higher limits. The standard form of policy was ordered from Klein by Klopper acting for appellants and no mention was made of any optional coverages available by endorsement. The binder was therefore subject to the limits of liability on particular items as set out in the policy then in current use by respondent.

This precise issue concerning qualification of insurance coverage under a binder incorporating the conditions of the prospective policy was considered in the case of *Swinney v. Connecticut Fire Insurance Co.*, 8 S.W.2d 1090 (Mo.App.1928). In that case, Swinney obtained a certificate, the then current term for a binder, from Connecticut for coverage on threshed and unthreshed grain and seed. Swinney's crop

of wheat was destroyed by fire during the effective period of the certificate and prior to issuance of the policy. The certificate indicated that it was issued subject to "the terms, conditions, and stipulations embraced in the standard fire insurance policy form."

Among the provisions of a then standard fire insurance policy was the following limitation:

> This entire policy * * * shall be void * * * if the interest of the assured be other than unconditional and sole ownership * * *.

*Swinney, supra,* 8 S.W.2d at 1091. After the loss, it was discovered by the insurer that the grain was encumbered by the lien of a chattel mortgage, the existence of which had been concealed by Swinney. The company denied payment for the loss on the ground that the lien deprived Swinney of unconditional ownership in the grain and therefore the certificate was void from inception.

The court agreed with the company's contention, holding that the policy was void for want of unconditional and sole ownership by the insured in the goods. The opinion announced three propositions bearing on the question. The first was that the terms of collateral documents or contracts referred to in an agreement will be construed and applied as part of the agreement itself. The second proposition was that an insurance certificate or binder does not represent the whole contract and the insurer may reasonably rely on the referenced policy terms. The final conclusion was that insurance provided under a binder is limited by the conditions of the policy despite the fact that the policy has not been issued and delivered as of the date when a loss is sustained.

*Swinney* has been cited with approval in subsequent cases, notably in *Fogle v. Fidelity-Phenix Fire Insurance Co. of New York*, 342 Mo. 1, 6, 111 S.W.2d 154, 158 (1937).[1] In that case, the court held it

---

1. *Swinney* was a majority opinion and, according to the dissenting opinion as published, the cause was certified to the Supreme Court on the ground of conflict with a prior opinion of the

Supreme Court. Independent research has disclosed that the court in Springfield did so certify the case, but it was never heard by the Supreme Court and the records of the Supreme

error to refuse admission in evidence of a fire insurance policy where the plaintiff claimed under a parol agreement for insurance and a loss was sustained before the policy was issued. The case was remanded for a new trial and consideration of the insurer's defense based on a policy condition as to vacancy of the insured structure.

A number of cases from other jurisdictions have held that a contract for temporary insurance incorporates the terms of the prospective policy, whether the terms are a part of the customary policy issued by the insurer or are prescribed by law. In the state of Georgia, as in Missouri and in other states, the right of an insurer to cancel a policy of automobile insurance may only be exercised by notice given the insured personally or by registered mail and any provisions in the policy relative to cancellation must conform to this requirement. In *Georgia Farm Bureau Mutual Insurance Co. v. Gordon*, 126 Ga.App. 215, 190 S.E.2d 447 (1972), the automobile coverage was on binder and the company claimed that for this reason, the statutory notice requirement did not apply. The court disagreed holding that once the binder is in effect, it is deemed to include all the terms of the policy and the binder could be cancelled only by the same notice required to cancel the policy.

In *Alabama Farm Bureau Mutual Casualty Insurance Co. v. Adams*, 289 Ala. 304, 267 So.2d 151 (1972), Adams procured an oral binder insuring a new vehicle which replaced a former vehicle insured by Farm Bureau. A loss occurred before the new policy was issued and the question was whether Farm Bureau was entitled to the benefit of a coverage exception shown in the former policy. The court held that it was, either on the ground that coverage under the former policy had been extended or, because it was to be presumed that the binder afforded insurance under the same terms as the previous policy currently in the standard form used by the company.

The plaintiffs in *Pickett v. First American Savings & Loan Association*, 90 Ill. App.3d 245, 412 N.E.2d 1113 (1980), paid premiums to the association for credit life insurance, but apparently through oversight, the association did not procure a policy. Plaintiff husband became disabled and made a claim for benefits. The association acknowledged responsibility but claimed the obligation was to refund to plaintiffs the premiums paid. The court held that the terms of the usual credit life insurance policy were available to prove the extent of plaintiffs' damages and the amount of the association's liability. The contract under which plaintiffs paid the premiums to the association was presumed to contemplate a policy containing conditions and limitations as are usual in such cases.

*Turner v. Worth Insurance Co.*, 106 Ariz. 132, 472 P.2d 1 (banc 1970), was a case similar to the present action in that the insured paid a premium to an agent for insurance and received a binder. The court held that when the binder was signed by an agent of the insurer, the contract of insurance was closed and the binder became in effect the same as a regular insurance policy. "By whatever name it may be known, a 'binder' for temporary insurance is a contract. Assuredly it is a contract in contemplation of a subsequent and more formal agreement, but by its nature it incorporates the terms of the prospective insurance contract, whether those terms are prescribed by law or are part of the customary policy used by the insurer." *Turner, supra*, 106 Ariz. at 133, 472 P.2d at 2.

In the present case, the evidence was undisputed that plaintiffs dealt through the real estate agent Klopper who instructed Klein only that the usual homeowners policy be obtained. There never was any mention made by plaintiffs or by Klopper of any need for special limits for coverage on silverware, or even that plaintiffs had any goods of special value. Extra coverage for silverware was available to be written by

Court do not indicate that the case was ever received or docketed. *Swinney* has been cited as authoritative in later years, particularly in *Fogle*, cited above. Reliance by the Supreme

Court on *Swinney* for authority appears to be sufficient ground for ignoring the aborted transfer and to regard as unfounded the perception by the dissenting judge of any conflict.

respondent, but only if requested, and then, only in consideration for payment of added premium. The evidence was also undisputed that the usual homeowners policy written by respondent, and by other companies writing such policies in Missouri limits liability for loss of silverware to $1,000.00.

Under these facts, the binder issued to plaintiffs was subject to the usual homeowners policy conditions expressly incorporated in the binder by reference. Plaintiffs were limited to a recovery of $1,000.00 for the loss of their silverware. No other complaint is made as to the adjustment of the loss and therefore respondent's payment tendered to plaintiffs fully satisfied respondent's obligation under the policy. The court correctly directed a verdict for respondent.

The other points appellants raise in their brief do not require any different disposition of the appeal and they are therefore denied without discussion.

The judgment is affirmed.

All concur.

